**James Henry LATNEY, Able-bodied Seaman, United States Merchant Marine, Appellant,**

v.

**Paul R. IGNATIUS, Secretary of the Navy, et al., Appellees.**

**No. 21681.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 14, 1968.

Decided June 30, 1969.

Mr. Arthur John Keeffe of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, and Mr. Thomas A. Rothwell, Jr., New York City, for appellant.

Mr. Thomas C. Green, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Oscar Altshuler, Asst. U. S. Atty., were on the brief, for appellees.

Before DANAHER,* LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

This appellant here challenges the District Court's dismissal of his petition for a writ of habeas corpus under circumstances and with respect to issues which we will set forth in some detail.

On August 11, 1967, appellant was arrested by military police in DaNang, South Vietnam, and was subsequently charged with premeditated murder[1] in connection with the fatal stabbing of one Trimm in Mamasan's Beach Bar, DaNang East. Both men were American merchant seamen serving aboard the S.S. Amtank,[2] an American-owned oil tanker under time charter to the Navy's Military Sea Transportation Service. On the critical date, the ship was in DaNang harbor off-loading to the Navy's Petroleum Office oil, gasoline and aviation fuel which had been transported from Japan for use by our Armed Forces in South Vietnam.

Having been formally charged, appellant filed a petition for a writ of habeas corpus in the United States Court of Military Appeals, asserting that appellees lacked jurisdiction[3] to try him by court-martial.[4] That court denied the petition. Appellant next sought habeas corpus in the District Court, which on January 16, 1968, dismissed his petition in the order now under review which embodied the following conclusions:

(1) "On August 11, 1967, there existed in Vietnam and its offshore waters a 'time of war' within the meaning of Article 2(10), Uniform Code of Military Justice;"

(2) "On August 11, 1967, petitioner was a person 'serving with or accompanying an armed force in the field' within the meaning of Article 2(10);"

(3) "Article 2(10) is not in violation of the Constitution of the United States."

We deem it unnecessary to explore further the claims which had here been addressed to us respecting the District Court's conclusions, set forth above. The Supreme Court had before it in O'Callahan v. Parker[5] a situation where the petitioner's crimes were not service-connected and accordingly the Court decided that O'Callahan could not be tried by court martial. Mr. Justice Douglas there undertook an interpretation of the Supreme Court's decisions, observing:

*We have held in a series of decisions that court-martial jurisdiction*

---

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

1. Article 118, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 918 (1964), provides:

   Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he—
   (1) has a premeditated design to kill;
   (2) intends to kill or inflict great bodily harm;
   (3) is engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life; or
   (4) is engaged in the perpetration or attempted perpetration of burglary, sodomy, rape, robbery, or aggravated arson; is guilty of murder, and shall suffer such punishment as a court-martial may direct, except that if found guilty under clause (1) or (4), he shall suffer death or imprisonment for life as a court-martial may direct.

2. On July 5, 1967, appellant had signed articles of employment with the S. S. Amtank in Japan to serve as an Able-Bodied Seaman for a period of 12 months.

3. Article 2, UCMJ, 10 U.S.C. § 802 (1964), upon which the military based its jurisdiction, provides in pertinent part:
   The following persons are subject to this chapter:
   *     *     *     *     *
   (10) In time of war, persons serving with or accompanying an armed force in the field.

4. Thereafter this court on February 23, 1968, denied appellant's motion to enjoin the court-martial proceedings pending resolution of the jurisdictional issues. Two days later, Latney was convicted by general court-martial of unpremeditated murder and was sentenced to confinement at hard labor for fifteen years.

5. 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed. 2d 291 (1969).

*cannot be extended to reach any person not a member of the Armed Forces at the times of both the offense and the trial.* Thus discharged soldiers cannot be court-martialed for offenses committed while in service. * * * Similarly, neither civilian employees of the Armed Forces overseas * * * nor civilian dependents of military personnel accompanying them overseas * * *, may be tried by court-martial.

*These cases decide that courts-martial have no jurisdiction to try those who are not members of the Armed Forces, no matter how intimate the connection between their offense and the concerns of military discipline* * * * [Citations omitted.] (Emphasis supplied.)[6]

We are aware that the *O'Callahan* opinion notes that the Court there was dealing with peacetime offenses, and with offenses committed within our territorial limits. 395 U.S. 273, 89 S.Ct. 1691. But the precedents discussed by Mr. Justice Douglas were relied on by our appellant, and were so analyzed by the Court as to sharpen the principle that a system of specialized military courts and discipline may be maintained consistently with our constitutional liberty only if restricted to its "proper domain," one that "rests on the special needs of the military." 395 U.S. 265, 89 S.Ct. 1687. It is fair to conclude that the spirit of *O'Callahan*, and of the other Supreme Court precedents there reviewed, precludes an expansive view of Article 2(10) of the Uniform Code of Military Justice, 10 U.S.C. § 802(10), even assuming as we do that this is a time of undeclared war which permits some invocation of the war power under which Article 2(10) was enacted. We think Article 2(10) may not be read so expansively as to reach this civilian seaman, employed by a private shipping company, and in no closer physical proximity or duration to the armed forces than a seaman in port for a short peri-

od, living on his ship and under the discipline of his civilian captain while waiting for it to turn around, not assimilated to any military personnel in terms of living quarters or conditions, who had been arrested for a crime committed in a bar frequented by civilians in port.

We think the Supreme Court precedents cut against any approach that would so apply the statute, which must in turn be construed conformably to constitutional principal, as to deprive him of the right of trial by jury on the ground that his crime was committed while he was in the status of one accompanying the armed forces in the field.

Under the circumstances we deem ourselves bound here to conclude that there was error in the denial of the writ.

The judgment of the District Court is reversed, and the case is remanded with directions that the writ be allowed and that Latney be released.

So ordered.

---

6. *Id.*, 395 U.S. 267, 89 S.Ct. 1687.