UNITED STATES, Appellee

v

MAGARO D. ORTIZ, Private First Class,
U. S. Marine Corps, Appellant

20 USCMA 21, 42 CMR 213

▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮

No. 22,843

August 14, 1970

▮▮▮▮▮▮▮▮▮▮▮▮

*Lieutenant Peter M. Frank*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Thomas J. Donegan, Jr.*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Charles J. Keever*, USMC.

## Opinion of the Court

QUINN, Chief Judge:

On his plea of guilty, a special court-martial convened at Camp Foster, Okinawa, convicted the accused of several offenses in violation of the Uniform Code of Military Justice. One of the offenses was robbery of an Okinawan taxi driver. The offense was perpetrated in a beach area, which was apparently outside the confines of any United States military installation on Okinawa.

The case was tried on July 23, 1969, which was subsequent to the effective date of the limitation of courts-martial jurisdiction defined by the Supreme Court of the United States in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969). See Mercer v Dillon, 19 USCMA 264, 41 CMR 264 (1970). As a result, the accused now contends that he could not be tried for the robbery because the offense was cognizable in a civilian court in Okinawa, which was open and functioning. See United States v Crapo, 18 USCMA 594, 40 CMR 306 (1969). He acknowledges that the limitation on court-martial jurisdiction is inoperative as to an act committed in a foreign country which is cognizable in the civilian courts of that country (United States v Keaton, 19 USCMA 64, 41 CMR 64 (1969); United States v Weinstein, 19 USCMA 29, 41 CMR 29 (1969)), but he contends that civilian courts in Okinawa are established by authority of the United States and are, therefore, courts within the meaning of the jurisdictional limitation delineated in *O'Callahan*.

In United States v Vierra, 14 USCMA 48, 33 CMR 260 (1963), we commented on the juridical basis of the relationship between the United States and Okinawa. We noted that the United States obtained physical control over Okinawa as a result of battle but that, under the peace treaty with Japan, Japan retained "residual sovereignty." *Id.*, at page 50. Until Japan reestablished operative control, the island was to be administered by the United States, pending establishment of a trusteeship under the auspices of the United Nations. Recent statements by President Nixon suggest that the United States may favor return of administrative control to Japan by 1972, without an interim period of trusteeship. From acquisition of the island to the present time, however, the area is an occupied zone of a foreign country. Language in the *O'Callahan* opinion tends to indicate that the cognizability of an act in a civilian court established by the United States in the administration of such territory does not preclude military prosecution of the act, if it constitutes a violation of the Uniform Code of Military Justice. Thus, the Supreme Court took occasion to remark that the offenses committed by O'Callahan were "committed within our territorial limits [Hawaii], not in the occupied zone of a foreign country." 395 US, at page 273. Assuming, however, that we attribute too much to the quoted statement, the civilian courts of Okinawa have no power to try the accused.

Okinawa is the principal island of the Ryukyu Islands. Its government, including the judiciary, rests upon a grant of authority from the President of the United States. United States v Vierra, supra. The grant provided for two systems of civilian courts, one maintained by the Government of the Ryukyu Islands, and the other by the United States Civil Administration Courts Ryukyu Islands (hereafter called USCAR). Executive Order No. 10713, June 5, 1957, 3 CFR, 1954–1958 Compilation, page 368, as amended by Executive Order No. 11010, March 19, 1962, 3 CFR, 1959–1963 Compilation, page 587. Pertinent parts of the or-

**22**

ganic provisions are set out in Appendix A.

In the *Vierra* case, the accused contended that the civilian courts had no jurisdiction over him as a person subject to the Uniform Code of Military Justice. It was not necessary to disposition of the case to rule on the contention so we did not examine it. United States v Vierra, supra, at page 51. In this case, the accused has reversed the argument to contend that USCAR courts have jurisdiction over United States military personnel and could try him for the robbery he committed. His argument is predicated upon the grant of criminal jurisdiction to USCAR over "employees of the United States Government who are United States nationals." Executive Order No. 11010, 3 CFR, 1959–1963 Compilation, page 590. Since USCAR courts were established by executive order and the judges thereof are employees of the United States and are appointed by, and apparently serve at the pleasure of, the High Commissioner, who is also the United States military commander, Government counsel contend they are not the kind of civilian courts contemplated by the Supreme Court in *O'Callahan* as organized and functioning in ways calculated to preserve all the rights guaranteed to an accused by the Constitution of the United States. We need not reach that question. As we have indicated, USCAR courts do not have jurisdiction over the accused by specific provision of the executive orders establishing their jurisdiction.

Section 10(b)(3) of the enabling order originally provided for USCAR criminal jurisdiction as follows: "Criminal jurisdiction over United States nationals employed by the United States or any agency thereof *who are not subject to trial by courts-martial under the Uniform Code of Military Justice* (10 U. S. C. 801 et seq.) and their dependents, excluding Ryukyuans." (Emphasis supplied.) Subdivision (c) extended jurisdiction over persons subject to the Uniform Code "only when the military commander concerned determines not to exercise military jurisdiction" under the Code and indicates that determination to the High Commissioner. Executive Order No. 10713, 3 CFR, 1954–1958 Compilation, page 370. The 1962 executive order was more expansive than the original grant of jurisdiction and expressly enumerated categories of persons triable in USCAR courts. Specifically, the changes were as follows:

"(3) Criminal jurisdiction over (a) the civilian component, (b) employees of the United States Government who are United States nationals, and (c) dependents, excluding Ryukyuans, (i) of the foregoing and (ii) of members of the United States forces." [Executive Order No. 11010, 3 CFR, 1959–1963 Compilation, page 590.]

The reference in subdivision (3)(a) to "the civilian component" clearly implies that this category is part of a larger group including persons not classifiable as civilians. The implication is made explicit and the noncivilians are identified by the preceding provision of section 10 which confers jurisdiction on the courts maintained by the Government of the Ryukyu Islands. Subdivision (2) of that grant provides in material part as follows:

"Criminal jurisdiction over all persons except (a) members of the United States forces or the civilian component, (b) employees of the United States Government who are United States nationals. . . ." [Executive Order No. 10713, 3 CFR, 1954–1958 Compilation, page 369.]

Reading the two provisions on jurisdiction together, which is appropriate because of their position and purpose in the text of the enabling orders, two conclusions appear to be justified. First, the 1962 amendment changed the original provision excluding all persons subject to the Uniform Code from USCAR jurisdiction by conferring jurisdiction over civilians who, by the terms of the Uniform Code, were subject to its provisions. See Article 2(10), (11), Uniform Code of Military Justice, 10 USC § 802.

Probably, the change was the result of decisions of the Supreme Court of the United States to the effect that certain civilians were not subject to trial by courts-martial. See Reid v Covert, 354 US 1, 1 L Ed 2d 1148, 77 S Ct 1222 (1957); McElroy v Guagliardo, 361 US 281, 4 L Ed 2d 282, 80 S Ct 305 (1960). Whatever the reason for the change, however, it did not confer jurisdiction over military personnel on active duty in Okinawa. The exclusion of military personnel from the general grant of jurisdiction is emphasized by the fact that the 1962 order left unchanged subdivision (c), which provides for release of military jurisdiction to the civilian courts of persons subject to courts-martial. Secondly, the enumeration of different classes of persons tends to indicate that a member of the armed forces is not an employee of the United States within the meaning of subdivision (b). Both conclusions are, in fact, embodied in the civil administration ordinance implementing the executive orders. Appendix B. This practical construction by those charged with administration of the orders provides weighty support to the conclusions. United States v Phillips, 18 USCMA 230, 234, 39 CMR 230 (1969); United States v Scheunemann, 14 USCMA 479, 34 CMR 259 (1964). Weighing these factors, and fully mindful of the principle that Americans "tried for crimes abroad under tribunals of United States provenance shall not be shorn of the protections of the Bill of Rights" (Rose v McNamara, 375 F2d 924, 926, footnote 4 (CA DC Cir) (1967)), in our opinion, the accused, as a person serving on active duty with the armed forces in occupied foreign territory, remained subject to trial by court-martial for his violation of the Uniform Code.

One final difference between this case and O'Callahan merits mention. In O'Callahan, the Supreme Court dealt with court-martial jurisdiction over the act. Here, we are concerned with jurisdiction over the person of the accused. The rationale of O'Callahan, however, is appropriate to de-

termination of the issue. Since the civilian courts of Okinawa do not have jurisdiction over the accused as a member of the armed forces, except as specifically authorized by the military commander, the military courts were not divested of jurisdiction over the accused. Cf. United States v Keaton, supra.

In the second assignment of error, the accused challenges the sufficiency of the sentence instructions. See United States v Wheeler, 17 USCMA 274, 38 CMR 72 (1967). The staff judge advocate of the general court-martial authority discussed the matter in his review and determined that "reassessment" of the sentence was "required." Taking note of the reductions effected by the convening authority, which included suspension of the punitive discharge imposed by the court-martial, he concluded that no further reduction was necessary to purge the instructional error. This reassessment of the sentence in light of the alleged error accorded the accused the relief to which he was entitled and makes further review of the error unnecessary. United States v Marshall, 18 USCMA 426, 433–434, 40 CMR 138 (1969).

The decision of the United States Navy Court of Military Review is affirmed.

Judges FERGUSON and DARDEN concur.

## APPENDIX A

### Executive Order No. 10713

"SEC. 10. Judicial powers in the Ryukyu Islands shall be exercised as follows:

"(a) A system of courts, including the civil and criminal courts of original jurisdiction and appellate tribunals, shall be maintained by the Government of the Ryukyu Islands. These courts shall exercise jurisdiction as follows:

(1) Civil jurisdiction in all civil cases, subject to the provisions of paragraphs (b)(1) and (2), below.

(2) Criminal jurisdiction over all persons except (a) members of the United States forces or the civilian component, (b) employees of the United States Government who are United States nationals even though not subject to trial by courts-martial under the Uniform Code of Military Justice (10 U. S. C. 801 et seq.), and (c) dependents of the foregoing, provided, nevertheless, that subject to paragraph (c), below, criminal jurisdiction may be exercised by Courts of the Government of the Ryukyu Islands over dependents who are Ryukyuans. Criminal jurisdiction may be withdrawn from the courts of the Government of the Ryukyu Islands by the High Commissioner in any case which affects the security, property, or interests of the United States and which is so designated by him.

"(b) A system of courts, including civil and criminal courts of original jurisdiction and appellate tribunals, shall be maintained by the civil administration. These courts shall exercise jurisdiction as follows:

(1) Civil jurisdiction over any case or controversy of particular importance affecting the security, property, or interests of the United States, as determined by the High Commissioner. Such cases instituted in a court of the Government of the Ryukyu Islands shall be transferred to the appropriate civil administration court upon order of the High Commissioner at any time in the proceedings, including final appellate process, prior to the entering of final decree, order or judgment. Cases so transferred may be subject to trial *de novo* in the discretion of the court of the civil administration.

(2) Civil jurisdiction in cases and controversies in which a member of the United States forces or the civilian component thereof, an employee of the United States Government who is a United States national, or a dependent of one of the foregoing, unless such dependent is a Ryukyuan, is a party if upon petition of one of the parties to the suit the High Commissioner deems the case to be important in its effect, direct or indirect, on the security of the islands, on foreign relations or on the security, property or interests of the United States or nationals thereof and determines that the civil administration should assume jurisdiction over the case. In this event, such cases instituted in a court of the Government of the Ryukyu Islands shall be transferred to the appropriate civil administration court by order of the High Commissioner at any time in the proceedings, including final appellate process, prior to the entering of final decree, order or judgment. Cases so transferred may be subject to trial *de novo* in the discretion of the court of the civil administration.

(3) Criminal jurisdiction over United States nationals employed by the United States or any agency thereof who are not subject to trial by courts-martial under the Uniform Code of Military Justice (10 U. S. C. 801 et seq.) and their dependents, excluding Ryukyuans.

(4) Criminal jurisdiction in specific cases of particular importance affecting the security, property, or interests of the United States, as determined by the High Commissioner. Such cases instituted in a court of the Government of the Ryukyu Islands may be transferred to the appropriate civil administration court upon order of the High Commissioner at any time in the proceedings, including the final appellate process, prior to the entering of final decree, order or judgment. Cases so transferred may be subject to trial *de novo* in the discretion of the court of the civil administration.

"(c) Criminal jurisdiction over persons subject to trial by courts-martial under the Uniform Code of Military Justice (10 U. S. C. 801 et seq.) will be exercised by courts other than courts-martial only when the military

**25**

commander concerned determines not to exercise military jurisdiction under the Uniform Code of Military Justice and specifically indicates to the High Commissioner his approval of referring the case to another court."

Executive Order No. 11010

"SEC. 2. *Further amendments.* Section 10 of the said Executive Order No. 10713 is hereby further amended as follows:

"(1) By deleting from Section 10(a) (2)(b) the following: 'even though not subject to trial by courts-martial under the Uniform Code of Military Justice (10 U. S. C. 801 et seq.)'.

"(2) By substituting the following for Section 10(b)(3):

'(3) Criminal jurisdiction over (a) the civilian component, (b) employees of the United States Government who are United States nationals, and (c) dependents, excluding Ryukyuans, (i) of the foregoing and (ii) of members of the United States forces.' "

## APPENDIX B

### Courts of Civil Administration Ordinance 144, 1955

"1.2.5. *Jurisdiction over Persons.* In conformity with the provisions of Executive Order No. 10713, dated 5 June 1957, jurisdiction of the USCAR Criminal Courts shall extend to:

"a. All persons who are United States Nationals employed by the United States or any agency thereof who are not subject to trial by courts-martial under the Uniform Code of Military Justice (10 USC 801 Et Seq.) and their dependents, excluding Ryukyuans.

"b. All persons, except those subject to trial by courts-martial under the Uniform Code of Military Justice (10 USC 801 Et Seq.), who are charged with offenses under Section 1.2.6 hereof.

"c. All persons subject to trial by courts-martial under the Uniform Code of Military Justice (10 USC 801 Et Seq.) when the military commander concerned determines not to exercise military jurisdiction under the Uniform Code of Military Justice and specifically indicates to the High Commissioner his approval of referring the case to a USCAR criminal court for trial.

"d. All persons charged with an offense or offenses which have been determined by the High Commissioner of the Ryukyu Islands to constitute specific cases of particular importance affecting the security, property or interest of the United States. (As amended by Ch 7/58)

.  .  .  .  .

"2.1.2. *'United States Forces Personnel'* shall include the following categories of personnel:

"a. Members of the Armed Forces of the United States on active duty with such forces;

"b. Non-Ryukyuan civilian employees of the United States Government or of any agency, arm or instrumentality thereof;

"c. Contractors with the United States Government of United States nationality and their employees of United States nationality present in the Ryukyu Islands solely for the performance of such contract.

"d. Non-Ryukyuan employees of the American Red Cross lawfully present within the Ryukyu Islands in such capacity.

"e. Dependents of any of the above lawfully present within the Ryukyu Islands.

"f. Non-Ryukyuan entertainers present within the Ryukyu Islands under a contract with the United States Government or any agency, arm or instrumentality thereof.

For the purposes of this section, the word 'non-Ryukyuan' does not include persons of Japanese nationality or citizenship."