**Edward B. WILLIAMSON, III, Petitioner,**
v.
**Noah L. ALLDRIDGE, Respondent.**
**Civ. No. 70-268.**

United States District Court,
W. D. Oklahoma.
Dec. 21, 1970.

841

Ronald R. McEnulty, Wichita, Kan., Leslie L. Conner, Jr., Oklahoma City, Okl., for petitioner.

William R. Burkett, John E. Green, Oklahoma City, Okl., for respondent.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Petitioner proceeds under 28 U.S.C.A. § 2241 et seq., applying for a writ of ha-

beas corpus to effect his release from the custody of the Respondent. According to the records of this case and evidence received by the Court at a hearing on Petitioner's Petition for Writ of Habeas Corpus, he was convicted by a military court martial while he was on active duty in Okinawa, having been charged with the crime of murder of a Ryukyuan citizen. When the crime was committed, Petitioner was properly absent from his duty post, in civilian clothes, and it may be concluded that his crime was in no way service-connected as that term is used in O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

Petitioner's grounds for issuance of the writ are, (1) he was denied the constitutional rights of indictment by grand jury and a trial by jury available in the civilian administration courts in Okinawa, and, (2) as civilian administration courts in Okinawa having jurisdiction of him and of his offense were available, the military court martial had no jurisdiction either of him or of his crime. The Court finds these grounds to be without merit in the circumstances of this case.

Petitioner relies principally on the O'Callahan case, and in order to understand why that case is inapplicable under the circumstances present, it is necessary to consider in some detail the governmental establishment in the Ryukyu Islands, of which the island of Okinawa is a part, after World War II. After the cessation of hostilities between the United States and Japan, a peace treaty was signed between the two sovereigns granting Japan residual sovereignty in the Ryukyu Islands. Art. 3, Treaty of Peace with Japan, United States Code, Congressional and Administrative Service, 1951, Vol. 2 at p. 2731; 3 U.S.T. 3169; Burna v. United States, 240 F.2d 720 (Fourth Cir. 1957). Thus, the Ryukyu Islands are part of a foreign country occupied by the United States. However, the Treaty granted to the President of the United States certain powers of sovereignty over the is-

lands. By authority of this grant of power, the President issued Executive Order 10713 which established the present organic government of the Islands. United States Code, Congressional and Administrative News, 1957, Vol. 1, pp. 903–907. The Order provided for two administrations, one consisting of a Ryukyuan Chief Executive and a Ryukyuan legislature, known as the Ryukyu Government, and the other consisting of a High Commissioner appointed by the Secretary of Defense, known as the Ryukyu Civil Administration.

The Order created court systems under both the Ryukyu Government and the Civil Administration Government, but it specifically excluded from the jurisdiction of the Ryukyu Government courts members of United States forces. And with respect to the Civil Administration Government courts, Sec. 10(c) of the Executive Order provides that:

> "Criminal jurisdiction over persons subject to trial by courts-martial under the Uniform Code of Military Justice (10 U.S.C. 801 et seq.) will be exercised by courts other than courts-martial only when the military commander concerned determines not to exercise military jurisdiction * *."

In no case has a member of the United States forces subject to court martial jurisdiction ever been remitted to the civil administration courts by a military commander. It was not done in this case.

It has been represented to the Court by stipulation that a law had been promulgated by the High Commissioner proscribing the crime of murder. One of the bases of Petitioner's claim herein is that a trial in a civilian court of Okinawa was available to him. As reported in Rose v. McNamara, 126 U.S.App.D.C. 179, 375 F.2d 924 (1967), a United States citizen (non-military) accused of a crime cognizable under laws promulgated by the High Commissioner is entitled to indictment by a grand jury and a trial by jury. That opinion also indicates that the jury need not be composed exclusively of United States citizens. Such indictment and trial, the court held, is constitutionally permissible. Other rights are secured to persons within the jurisdiction of the Civil Administration courts by Sec. 12 of the Executive Order 10713.[1]

■■ Although it would appear that Petitioner would enjoy full constitutional rights in the Civil Administration Government courts of Okinawa, the source of the rights enumerated by Sec. 12, supra, and noted in Rose v. McNamara, supra, is not constitutional. The Ryukyu Islands are, as stated before, a foreign country, and the United States Constitution does not extend to United States citizens in foreign countries even though tried by courts of the United States. Ross v. McIntyre, 140 U.S. 453, 11 S.Ct. 897, 900, 35 L.Ed. 581 (1891). In the cited case, a merchant seaman was tried for murder aboard an American vessel anchored in Yokohama Harbor, Japan. Pursuant to a treaty with Japan, he was to be tried by the American Consular Court in Japan. He demanded, and was denied, indictment by a grand jury and trial by jury. The Supreme Court held that he was not entitled to these rights nor any other protections of the United States Constitution, for the reason that the United States Constitution has no extraterritorial effect. See also, Casement v. Squier, 46 F.Supp. 296 (D.C.Wash. 1942), aff'd 9 Cir., 138 F.2d 909. The Consular Courts involved in the cited cases are creatures of statute. The Civil Administration courts involved herein are creatures of the exercise of the executive power. In that, they are unique. Not since the period following the civil war has such power been wielded by the

---

1. Sec. 12 reads: "In carrying out this order * * * the High Commissioner shall preserve to persons in the Ryukyu Islands the basic liberties enjoyed by people in democratic countries, including the freedom of speech, assembly, petition, religion and press, and security from unreasonable searches and seizures, and from deprivation of life, liberty or property without due process of law."

President.[2] The President alone is empowered to provide for the administration of the Ryukyu Islands. In his unfettered discretion, he may at any given moment revoke Executive Order 10713 and abolish the Civil Administration courts with their rights of trial by jury and indictment by grand jury established thereunder. He may do these things by virtue of the powers conferred on him, not by the United States Constitution, nor by Congress, but by Japan through Art. 3 of the Treaty of Peace. Thus, it is also within his power, unrestricted by constitutional considerations, to require that military persons in a foreign country be tried by military tribunals for any offense that they commit cognizable under the Uniform Code of Military Justice. The United States Constitution simply is not present in Okinawa.[3] The rights to grand jury indictment and jury trial in the Civil Administration courts are not constitutional rights but only rights existing at the pleasure of the President. It follows that Petitioner was not under the protection of the United States Constitution in Okinawa and his remission to the Civil Administration courts would not have secured to him United States Constitutional rights as contemplated by O'Callahan v. Parker, supra.

As there existed no rights in the Civil Administration courts of Okinawa having their source in the United States Constitution, and as Petitioner was without the protection of the United

States Constitution insofar as the laws of that country are concerned, his claimed denial of the rights of indictment by grand jury and trial by jury, insofar as they are founded in the United States Constitution, is without merit. There can be no denial of constitutional rights where they do not exist.

However, assuming that O'Callahan v. Parker, supra, does not mean that the trial available in a civilian court must be a constitutional trial but merely a trial by civilian authorities, the Court is of the opinion that even in that extreme case, the United States Constitution does not require abdication of military authority. The United States may constitutionally waive jurisdiction over its servicemen in foreign countries. Wilson v. Girard, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957). But, jurisdiction was not waived in this instance as the military commander did not determine not to exercise military jurisdiction, and it has been held that the Civil Administration courts of Okinawa have no jurisdiction to try a member of the United States forces accused of crime. United States v. Ortiz, USCMA, No. 22843, August 14, 1970; United States v. Vierra, 14 USCMA 48, 33 CMR 260 (1963).[4]

The Court does not consider that O'Callahan goes so far as to require remission of United States servicemen to the courts of foreign countries, Gallagher v. United States, 423 F.2d 1371 (Ct. Cl.1970), or to United States courts

---

2. See Duncan v. Kahanamoku, 327 U.S. 304, 66 S.Ct. 606, 90 L.Ed. 688 (1946), 327 U.S. at pages 323–324, 66 S.Ct. at pages 615–616, 90 L.Ed. at pages 699–700, and President Johnson's comments on the legislation vesting in him such broad powers at footnote 21 of the opinion.

3. The case is different with respect to territories and possessions of the United States: See Duncan v. Kahanamoku, supra, footnote 1, and the application of Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901) to People of Porto Rico v. Tapia, 245 U.S. 639, 38 S.Ct. 192, 62 L.Ed. 525 (1918).

4. These cases held that no civil jurisdiction attached until military jurisdiction was relinquished by the military commander concerned as specified in Sec. 10(c) of Executive Order 10713. This reasoning seems questionable in the light of the O'Callahan decision holding that military jurisdiction *does not exist* if a proper civilian trial is available. Under the reasoning of these cases, if military jurisdiction were held not to exist by reason of O'Callahan, then there would be no court competent in Okinawa to try military persons accused of crime.

staffed by United States personnel in foreign countries, Ross v. McIntyre, supra. Justice Douglas apparently recognized that crimes by servicemen in foreign countries were distinguishable from the situation in the O'Callahan case. He stated,

"The offenses were committed within our territorial limits, not in the occupied zone of a foreign country." 395 U.S. at p. 273, 89 S.Ct. at p. 1691, 23 L.Ed.2d at p. 302.

Okinawa is part of a foreign country and it is obviously occupied by United States forces. In Gallagher v. United States, supra, the court looked to treaties between the United States and Germany to determine whether military jurisdiction existed, rather than to constitutional limitations on military authority as was done in O'Callahan. Likewise, in this case we must look to the treaty.

The Court would add one other thought concerning the O'Callahan decision. The Supreme Court stressed the circumstance that trial in a civilian court " * * * is held in an atmosphere conducive to the protection of individual rights * * * " while military justice is essentially retributive. 395 U.S. at page 266, 89 S.Ct. at page 1687, 23 L.Ed.2d at page 298. The Court would question whether such atmosphere would necessarily exist in an Okinawan court where members of the jury are not required to be citizens of the United States, Rose v. McNamara, supra, and the population of the island consists largely of a recently defeated enemy in whose minds there could be implanted the memory of their defeat. It may be that military justice in this case would be less retributive than that afforded by an Okinawan jury.

■ In any event, O'Callahan should not apply to this case as the Court deems the rule of that case to be not retroactive. The criteria of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199 (1967), have been examined

and applied to this particular type of case in Gosa v. Mayden, 305 F.Supp. 1186 (N.D.Fla.1969), and Bell v. Clark, 308 F.Supp. 384 (E.D.Va.1970), with a resultant holding of nonretroactivity.[5] This Court cannot materially add to the excellent opinions and discussion of the reasons for non-retroactivity reported in those cases.

Petitioner's Petition for Writ of Habeas Corpus should be denied. Counsel for Respondent is directed to prepare an order of dismissal of this action in conformity with this Memorandum Opinion within ten (10) days from the date hereof.

---

5. The Court of Military Appeals has reached the same conclusion. Gosa v. United States, 19 USCMA 327, 41 CMR 327 (USCMA 1970)'; Mercer v. Dellon, 19 USCMA 264, 41 CMR 264 (USCMA 1970).