**UNITED STATES ex rel. Daniel JACOBS, Petitioner,**

**v.**

**Hon. Robert FROEHLKE, Secretary of the Army, and John Doe, Commanding Officer, Fort Buckner, Okinawa, Respondents.**

**No. 94–71.**

United States District Court, District of Columbia.

Nov. 16, 1971.

---

Stephen L. Fine, Lubell, Lubell, Fine & Schaap, New York City, Gary H. Simpson, Chevy Chase, Md. and Mark L. Amsterdam, Koza, Okinawa, for petitioner.

David M. Bullock, Asst. U. S. Atty., Washington, D. C., for respondents.

## MEMORANDUM

GASCH, District Judge.

This matter came on for hearing on relator's petition for writ of habeas corpus and was heard in open Court. Petitioner is a United States serviceman stationed in Okinawa. The appropriate military authority has brought charges against him which have been referred to a military court martial for trial. The charges are carnal knowledge in which the complaining witnesses are three young girls, the dependents of United States military personnel also stationed at this base; the additional charge involves marihuana.

The thrust of the petition is that under O'Callahan v. Parker,[1] or at least within the spirit of that case, petitioner can only be tried by a court wherein he would be subject to indictment by grand jury and trial by jury. It is suggested that the civilian court set up by a directive of the High Commissioner of Okinawa who is also the United States Military Commander for that area would meet those criteria. In O'Callahan v. Parker, *supra,* the Supreme Court granted certiorari limited to the following question:

"Does a court-martial, held under the Articles of War, Tit. 10, U.S.C. § 801 et seq., have jurisdiction to try a member of the Armed Forces who is charged with commission of a crime cognizable in a civilian court and having no military significance, alleged to have been committed off-post and while on leave, thus depriving him of his constitutional rights to indictment by a grand jury and trial by a petit jury in a civilian court?" 393 U.S. 822, 89 S.Ct. 177, 21 L.Ed.2d 93.

To determine the applicability of *O'Callahan* as a governing precedent, one should examine the criteria mentioned in the above-noted limitation: One, a crime cognizable in a civilian court; two, a crime having no military significance; and three, a crime committed off post and while on leave.

With respect to the first qualification, the government states, and petitioner does not dispute, that in the U.S. civilian-type courts set up by the Military High Commissioner of Okinawa under Presidential authorization carnal knowledge is *not* included as an offense within the jurisdiction of those courts.[2] Only in the courts established for the trial of Ryukyuan natives is statutory rape specified as a crime. Two: While in *O'Callahan* the prosecution of a soldier charged with attempting to rape a civilian was regarded as a crime of no military significance, the circumstances of

---

1. 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

2. This USCAR court is not a U. S. District Court. See footnote 4, Rose v. McNamara, 126 U.S.App.D.C. 179, 375 F.2d 924 (1967). See Code of Penal Law and Procedure, Civil Admin.Ordinance #144 issued by U. S. Civil Administration of Ryukyu Islands, March 16, 1955, as last amended December 18, 1969.

this case are different. Here, the children allegedly molested are the children of military personnel. Should this Court grant the petition and thus relegate petitioner's case to trial by the U. S. civilian court for Okinawa, which has no jurisdiction over the offense involved, the crime charged would be regarded as of military significance in that such an offense, if unresolved by trial, would have serious and detrimental consequences upon the maintenance of good order and military discipline. Feuding among military personnel or the attempted administering of extrajudicial punishment by those personally involved in such emotionally charged incidents is the antithesis of the maintenance of good order and military discipline.[3] The third point of distinction is that petitioner's apartment was located near, though not on, the military installation. The government asserts that the entire island of Okinawa is under the jurisdiction of the Military Commandant and for that reason the entire island constitutes the post.[4]

Clearly the first condition of the limitation in *O'Callahan* is significant. The second limitation is at least arguable and to this Court, persuasive. The third limitation can be predicated directly on Mr. Justice Douglas' language in *O'Callahan* at page 273 of 395 U.S., at page 1691 of 89 S.Ct. wherein he noted that the offenses were "committed within our territorial limits, *not in the occupied zone of a foreign* country." (Emphasis supplied.)

In *O'Callahan* the soldier had left his military post in Hawaii on a pass and was in civilian clothes at the time he broke into the hotel room of the complaining witness and assaulted her with intent to commit rape. Her screams drove him away but he was apprehended by an employee of the hotel and ultimately turned over to the military authorities. The civilian criminal courts in Hawaii in which the constitutional provisions of indictment by grand jury and trial by jury are required were available for disposition of these charges against O'Callahan. Thus the crime in *O'Callahan* was clearly cognizable in a civilian court in U. S. territory, was of little or no military significance, and was committed outside the military area.

Here, the situation is manifestly different. Our Court of Appeals in Rose v. McNamara, 126 U.S.App.D.C. 179, 375 F.2d 924, pointed out that our country in the Treaty of Peace with Japan has signified its purpose not to hold Okinawa as a United States possession. Recently the President of the United States has committed this country to restore Okinawa to Japanese sovereignty. It is anticipated that this restoration will take place in the very near future. Thus, the U. S. civilian courts authorized by executive order will be phased out of existence shortly.[5] At the present time

---

3. The Supreme Court observed at page 366 of Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, at page 656, 28 L.Ed.2d 102:

"There are still other significant aspects of the Relford offenses: The first victim was the sister of a serviceman who was then properly at the base. The second victim was the wife of a serviceman stationed at the base; she and her husband had quarters on the base and were living there."

See also W. Winthrop, Military Law and Precedent 724, quoted at page 368 of 401 U.S., 91 S.Ct. 649. It is noted further that in *Relford* the offense was alleged to have been committed at Fort Dix, New Jersey. But see United States v. Henderson, 18 U.S.C.M.A. 601 (1969).

4. The U. S. Court of Military Appeals in United States v. Ortiz, 20 U.S.C.M.A. 21, 42 C.M.R. 213 (1970), distinguished the *O'Callahan* case and held that its doctrine was not applicable to a soldier charged with robbery "outside the confines of any military installation in Okinawa."

5. See Cong.Rec., November 9, 1971, p. S17951, 17952, reflecting consent by the Senate of the Presidential act agreeing to withdrawal of U. S. authority and return of Okinawa to Japanese sovereignty. The expected effective date is two months after the exchange of ratification instruments.

the Ryukyuan courts are limited in their jurisdiction to the trial of Okinawans. It is highly questionable that any charge against petitioner could be brought in such courts as the Japanese may establish in Okinawa in the future.

In Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102, a rape and kidnapping conviction by court martial of a soldier was sustained. There the offense was committed on a military reservation in New Jersey where the serviceman was based. The two victims were dependents of other military personnel. It was Relford's contention that *O'Callahan* was controlling and that his conviction by court martial should be vacated.

The Supreme Court at page 365 of 401 U.S., at page 655 of 91 S.Ct. specified twelve criteria,[6] all of which were present in *O'Callahan* and which establish the basis on which this rule should be applied. Attention should be focused on (3), (4), and (8), which read as follows: (3) "Its commission at a place not under military control." (4) "Its commission within our territorial limits and not in an occupied zone of a foreign country." (8) "The presence and availability of a civilian court in which the case can be prosecuted."

These key factors are not present in the instant case.

In *Relford,* the Supreme Court concluded with respect to those factors which are applicable:

"It is at once apparent that elements 4, 6, 8, 11, and 12, and perhaps 5

and 9, operate in Relford's favor as they did in O'Callahan's. . . ."

"Just as clearly, however, the other elements, present and relied upon in O'Callahan's case, are not at hand in Relford's case. These are elements 1, 2, 3, 7, and 10: Relford was not absent from the base; the crimes were committed on the military enclave; the second victim, because of her duties at the post exchange and because of the fact that her abduction and the attack upon her took place as she was returning to the PX at the end of a short and approved break in her work, was engaged in the performance of a duty relating to the military; and the security of two women properly on the post was threatened and, indeed, their persons were violated."

"There are still other significant aspects of the Relford offenses: The first victim was the sister of a serviceman who was then properly at the base. The second victim was the wife of a serviceman stationed at the base; she and her husband had quarters on the base and were living there. Tangible property properly on the base, that is, two automobiles, were forcefully and unlawfully entered."

As previously mentioned, attention should be focused upon elements 3, 4, and 8. Okinawa is conquered territory and as a result thereof, was under the control of the military authorities. It is an occupied zone of a foreign country. To use Mr. Justice Douglas' words in *O'Callahan,* "a far flung military base,"

6. 1. The serviceman's proper absence from the base.
   2. The crime's commission away from the base.
   3. Its commission at a place not under military control.
   4. Its commission within our territorial limits and not in an occupied zone of a foreign country.
   5. Its commission in peacetime and its being unrelated to authority stemming from the war power.
   6. The absence of any connection between the defendant's military duties and the crime.

   7. The victim's not being engaged in the performance of any duty relating to the military.
   8. The presence and availability of a civilian court in which the case can be prosecuted.
   9. The absence of any flouting of military authority.
   10. The absence of any threat to a military post.
   11. The absence of any violation of military property.
One might add still another factor implicit in the others:
   12. The offense's being among those traditionally prosecuted in civilian courts.

and unlike *O'Callahan,* no civilian court is present and available in which the case can be prosecuted.

As Mr. Justice Blackmun concluded in *Relford* at page 369 of 401 U.S., at page 657 of 91 S.Ct.:

> "We recognize that any *ad hoc* approach leaves outer boundaries undetermined. *O'Callahan* marks an area, perhaps not the limit, for the concern of the civil courts and where the military may not enter. The case today marks an area, perhaps not the limit, where the court-martial is appropriate and permissible. What lies between is for decision at another time."

This case lies in between. In the Court's judgment, it falls in the ambit of those cases which must be left within the jurisdiction of the military recognizing the rule in United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8: Courts martial must be limited to the least possible power adequate to the end proposed. Here, the offense alleged occurred not in Hawaii but in Okinawa, one of our far flung outposts, an armed camp under military control [7] where no Article III or even Article I courts are available.[8] The only U. S. civilian-type court on this island does not have jurisdiction over this offense nor over U. S. servicemen unless the case is referred by the Military Commander.[9] Both occupation-type courts and courts martial draw their authority from the same source.[10]

Finally, petitioner argues that it is irrelevant that there is no alternate available American court to try this case. For this proposition he states disagreement with *Ortiz, supra,* and relies largely on Latney v. Ignatius, 135 U.S.App. D.C. 65, 416 F.2d 821. *Latney,* however, concerned a merchant seaman charged with killing another merchant seaman in a DaNang bar in South Vietnam. The Supreme Court in *O'Callahan* reviewed McElroy v. United States ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed. 2d 282 and Grisham v. Hagan, 361 U.S. 278, 80 S.Ct. 310, 4 L.Ed.2d 279, respectively, for the proposition that civilian employees of the armed forces serving overseas may not be tried by courts martial. That is the per curiam holding of the Court of Appeals in *Latney.*

Petitioner's able counsel strenuously argued that since petitioner has a constitutional right to indictment and trial by jury that even if Congress has failed to provide for a court that would meet these essential requisites that petitioner should not be relegated to trial by court martial. The argument that a soldier is entitled to indictment by grand jury and trial by jury is not new [11] and when, as in this case, the crime alleged to have been committed was committed on foreign soil subject to military occupation by the United States and is a crime which has some significance insofar as the maintenance of good order and military discipline is concerned, jurisdiction and authority of the court martial to try the case must be recognized, particularly since no other court is available.

Rule discharged; petition denied.

---

7. O'Callahan v. Parker, 395 U.S. 258, 273, 89 S.Ct. 1683.

8. Rose v. McNamara, 375 F.2d at 926.

9. Williamson v. Alldridge, D.C., 320 F. Supp. 840, 843.

10. Madsen v. Kinsella, 343 U.S. 341, 346, 354, 72 S.Ct. 699, 96 L.Ed. 988.

11. See dissenting opinion in Burns and Dennis v. Wilson, 346 U.S. 137, 152, 73 S.Ct. 1045, 97 L.Ed. 1508. See also *O'Callahan, supra,* at pp. 261, 262, 89 S.Ct. 1683. In *Relford, supra,* although the offense was against civilians, trial by court martial was approved.