**UNITED STATES ex rel. Daniel JACOBS, Appellant,**

v.

**Honorable Robert F. FROEHLKE, Secretary of the Army, et al.**

**No. 71-2065.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 31, 1973.

Decided July 9, 1973.

Stephen L. Fine, New York City, with whom Gary H. Simpson, Bethesda, Md., was on the brief, for appellant.

James A. Fitzgerald, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and David M. Bullock, Asst. U. S. Attys., were on the brief, for appellees.

Before LEVENTHAL and ROBB, Circuit Judges, and CHARLES R RICHEY,* United States District Judge of the United States District Court for the District of Columbia.

CHARLES R. RICHEY, District Judge:

Appellant was a member of the United States Army stationed at Fort Buckner in Okinawa. He was charged by the Army with five specifications (counts) of violation of Article 120 of the Uniform Code of Military Justice, 10 U.S.C. § 920, in that, at various times between August 5 and 9, 1971 he did "commit the offense of carnal knowledge" with three different girls, all of whom were under sixteen and were civilian dependents of military personnel stationed on Okinawa. He was additionally charged with three specifications of transfer of marijuana, in violation of Article 134 of the UCMJ, 10 U.S.C. § 934, occurring during the same period. All of the violations with which appellant was charged took place in his off-base apartment next door to the Bar Chicago, Futenma, Okinawa.

■ At the time these proceedings were initiated in the District Court, appellant had been placed on administrative restriction pending a general court-martial. He filed a petition in the District Court for a writ of habeas corpus, seeking release from restriction pending court-martial, a declaration that the court-martial was "unlawful", and the enjoining of military authorities from proceeding with the court-martial, all upon the theory that he was being held for trial by a court-martial which lacked jurisdiction to try him for the offenses charged. The District Court entered an order requiring the Government to show cause why the writ of habeas corpus should not be issued, and a hearing was held on November 11, 1971. By judgment entered on November 16, 1971, the District Court dismissed appellant's petition for a writ of habeas corpus and discharged the rule to show cause. United States ex rel. Jacobs v. Froehlke, 334 F.Supp. 1107 (D.D.C.1971). This appeal followed, but during the interim between the filing of the appeal and presentation of oral argument, appellant was convicted by court-martial on his pleas of guilty to four specifications of carnal knowledge and three specifications of transfer of marijuana, served his sentence, and was discharged from the Army with a bad conduct discharge. The action for writ of habeas corpus is thus moot. Accordingly, and for purposes of this appeal, we shall treat appellant's action as one for a declaratory judgment seeking to have appellant's court-martial declared unlawful because it was without jurisdiction to try him for the offenses charged.[1]

The thrust of appellant's argument is that under the rule of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L. Ed.2d 291 (1969), he could only be tried by a civilian court subject to the Constitutional guarantees of indictment by grand jury and trial by jury. In O'Callahan, the Supreme Court held that a serviceman cannot constitutionally be tried by a court-martial unless his crime is service connected, lest trial by court-martial "be expanded to deprive every member of the armed services of the benefits on an indictment by a grand jury and a trial by a jury of his peers." 395 U.S. at 273, 89 S.Ct. at 1691. Appellant contends that his offenses, having been committed outside a military reservation in Okinawa and involving ci-

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. We note that Article 134 of the UCMJ, 10 U.S.C. § 934, under which appellant was convicted for the transfer of marijuana, was held unconstitutional by this Court in Avrech v. The Secretary of the Navy, 155 U.S.App.D.C. 352, 477 F.2d 1237 (March 20, 1973). The constitutionality of Article 134 was not raised as an issue in the instant case, nor do we feel constrained to determine whether the ruling in Avrech affects appellant's conviction here, since he was primarily convicted for statutory rape under Article 120 of the UCMJ.

vilian dependents of military personnel, were not "service connected" within the meaning of *O'Callahan*.

The factors to be considered in determining that an offense is not service connected within the meaning of the *O'Callahan* rule were developed by the Supreme Court in Relford v. Commandant, 401 U.S. 355, 365, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).[2] There, a rape and kidnapping conviction by court-martial of a soldier was sustained because several factors were absent from the circumstances presented to the Court.

In denying appellant's petition in the instant case, the District Court found that three key factors were absent from the circumstances under which the offenses were committed, so that the rule in *O'Callahan* was not applicable. First, it found that the offenses were not committed at "a place not under military control," presumably because civilian administration of the Ryukyu Islands, of which Okinawa is a part, was under the jurisdiction of the Secretary of Defense and headed by a High Commissioner designated by the Secretary from among the active duty members of the armed forces. Second, it found that the offenses were not committed "within our territorial limits" but in an "occupied zone of a foreign country," Japan. Finally, the District Court found that there was no civilian-type court on Okinawa in which the case could have been prosecuted.

Although there are strong arguments for the District Court's conclusion as to each of these points, there are countervailing considerations that have to be taken into account as to the first two. As to whether the Ryukyus was a place "under military control," the issue is easier when what is under discussion is whether the offense was on a military base, where there are palpable requirements for military discipline. But here the "capital" crime relates to a civilian population under the rule of a military or naval officer designated by the President or Secretary of Defense to be a Commissioner or Governor. That is, in effect, the status of the Canal Zone, and was the status of e. g. the Virgin Islands prior to 1931 when the supervision of the appointed Governor was transferred from the Secretary of the Navy (at which time naval officers were customarily designated) to the Secretary of the Interior. Similar considerations apply to the issue of whether the Ryukyus were an "occupied zone of a foreign country" after the signing of the peace treaty, with undisputed recognition that no trace of belligerency survived.

■ However, we need not resolve those questions, because in the present case it is enough that there was no U. S. civilian-type court in the island that had jurisdiction over the offense of statutory rape. The crime of statutory rape was not defined as a crime by the U. S. civilian-type courts of the Ryukyus.

2. 1. The serviceman's proper absence from the base.
   2. The crime's commission away from the base.
   3. Its commission at a place not under military control.
   4. Its commission within our territorial limits and not in an occupied zone of a foreign country.
   5. Its commission in peacetime and its being unrelated to authority stemming from the war power.
   6. The absence of any connection between the defendant's military duties and the crime.
   7. The victim's not being engaged in the performance of any duty relating to the military.
   8. The presence and availability of a civilian court in which the case can be prosecuted.
   9. The absence of any flouting of military authority.
   10. The absence of any threat to a military post.
   11. The absence of any violation of military property.
   One might add still another factor implicit in the others:
   12. The offense's being among those traditionally prosecuted in civilian courts.

Perhaps if there were civilian courts available to try such offenses they should be prescribed for American servicemen for off-base offenses.[3] But the fact that such civilian courts are unavailable cannot be translated into a requirement that this element of military discipline must be waived entirely, and that American servicemen must be left free of all restraints off base other than those prescribed for the protection of citizens of the exotic lands in which they may be based, notwithstanding the impact of their acts on other servicemen or civilians in the families of servicemen.

As to appellant's reliance on Latney v. Ignatius, 135 U.S.App.D.C. 65, 416 F.2d 821 (1969), that case did not involve a serviceman defendant, and in such cases there is a special set of criteria for determining whether their crime is service connected.

The judgment is affirmed.

3. In the Ryukyus this would have required the Military Commander to surrender jurisdiction over the servicemen to the civilian courts in *O'Callahan* type situations of off base offenses.