UNITED STATES, Appellee

v

JAMES T. NEWVINE, Airman First Class, U. S. Air Force,
Appellant

No. 28,113

August 2, 1974

*Captain Kenneth R. Powers* argued the cause for Appellant, Accused. With him on the brief were *Colonel William E. Cordingly* and *Lieutenant Colonel James LaBar.*

*Colonel C. F. Bennett* argued the cause for Appellee, United States.

### OPINION OF THE COURT

QUINN, Judge:

Convicted by a general court-martial of unpremeditated murder, the accused contends that, under O'Callahan v Parker, 395 US 258 (1969), the offense was not triable in a military court.

The accused was stationed at Laughlin Air Force Base, which is near the border town of Del Rio, Texas. Early Saturday morning, January 27, 1973, while off-duty, the accused went to Ciudad Acuna, Mexico. There, he killed a girl in a dispute over the terms of an arrangement he had made with her when they had met at a nightclub. An investigation by Mexican and Texas police led to the accused. In due course, he was charged by military authorities with premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918, and was convicted by a general court-martial of unpremeditated murder. As he did at trial, the accused contends that his visit to Mexico "for an evening's entertainment" was "totally unrelated to the military" so that his criminal conduct was, under the *O'Callahan* case, not triable by court-martial.

By its terms, the Uniform Code "applies in all places." Article 5, UCMJ, 10 USC § 805. However, in the *O'Callahan* case, the Supreme Court held that conduct in the civilian community by a person subject to the Uniform Code, which constitutes a violation both of the Code and the community's civilian penal code, but which has no special military significance or connection, cannot be prosecuted in a military court. This restriction on the exercise of court-martial jurisdiction was perceived by the Supreme Court as the only "way of saving to servicemen and servicewomen . . . the benefits of indictment and of trial by jury" guaranteed by the Fifth and Sixth Amendments. 395 US at 273. These rights are not assured by the United States Constitution to an accused in the courts of a foreign country in a prosecution for a violation of that country's penal code; as a result, we have held that the constitutional restriction on the exercise of military prosecution, postulated in *O'Callahan,* does not apply to conduct violative of the Uniform Code that takes place "in a foreign country and . . . [is] not contrary to American civilian penal statutes having effect" in the foreign country so as to be cogniza-

ble in a civilian court in an American jurisdiction. United States v Weinstein, 19 USCMA 29, 30, 41 CMR 29, 30 (1969). We elaborated on the rationale for the inapplicability of *O'Callahan* to an offense committed by a serviceman in a foreign country in United States v Keaton, 19 USCMA 64, 41 CMR 64 (1969). The Court of Appeals for the 10th Circuit has reached the same conclusion. "[M]ilitary jurisdiction of crimes committed by servicemen in foreign countries," it said, "is left untouched by O'Callahan." Hemphill v Moseley, 443 F2d 322, 323–324 (10th Cir 1971). See also Gallagher v United States, 423 F2d 1371 (Ct Cl 1970).

To escape the logic and decision of these cases, appellate defense counsel cite a passage in the respected work of Colonel Winthrop, Military Law and Precedents, 2d ed 1920 Reprint, to support an hypothesis that court-martial jurisdiction can be exercised as to a violation of the Uniform Code committed in a foreign country only if the offender was present there "in some military capacity." As the accused was in Mexico for entirely private reasons, counsel conclude, within the framework of their hypothesis, that a court-martial cannot try the accused for the murder he committed there, notwithstanding the act constitutes a violation of the Uniform Code. Counsel's formulation is, however, predicated upon a reading of Colonel Winthrop's comments that is too narrow and too selective.

The text of Winthrop's statement is set out in the Appendix. Suffice it to note here two aspects of his discussion that are passed over in the defense argument. First, Colonel Winthrop does not espouse an absolute rule of non-amenability to trial by court-martial for an offense committed in a foreign country, when the offender was there, in the Colonel's language, "for private business or amusement, or on a social visit, or for other personal reason." Winthrop, supra at 83. On the contrary, Winthrop specifically pointed out that "amenability to trial by a court-martial . . . would depend upon the nature of the offense itself," and he cited, with approval, the conviction of an officer by a court-martial in Texas for conduct unbecoming an officer while he was in Mexico on a visit. *Id.* The portion of Colonel Winthrop's statement cited by appellate defense counsel, which notes that a "crime or disorder committed against an inhabitant of the [foreign] country could *ordinarily* scarcely be cognizable under the 62d Article [of War, now part of Article 134 of the Uniform Code] as prejudicial to military discipline," is, by its own terms, not an argument for absolute immunity from court-martial prosecution for the offense. *Id.* [Emphasis supplied.] Rather, the statement expresses the well-established rule that conduct by a member of the armed forces in the civilian community which affects a private person and is violative of local criminal law is not necessarily conduct to the prejudice of good order and discipline. United States v Grosso, 7 USCMA 566, 571, 23 CMR 30, 35 (1957). An unlawful homicide is now a specific military offense under the Uniform Code. It would not have been regarded by Colonel Winthrop as being the kind of offense constituting a violation of the then Article of War 62. Subject to the limitation as to capital offenses, that Article dealt with disorders and neglects to the prejudice of good order and military discipline, which, as Colonel Winthrop noted, were not otherwise specifically listed as offenses. Winthrop, supra at 720–722. Secondly, Colonel Winthrop's discussion of then Article of War 64 and the basis of his criticism of a ruling by the Acting Judge Advocate General of the Army as to the meaning of that Article leave no doubt he would agree that the present provision of Article 5 that the Code "applies in all places" would alone confer courts-martial "jurisdiction over offenses committed . . . in foreign countries, and thus . . . constitute authority for the trial, by a court-martial convened in our own territory, of a military offense committed abroad." *Id.* at 83–84.

In United States v Bowman, 260 US 94 (1922), the Supreme Court recognized the constitutional power of Congress to impart extra-territorial effect to a criminal statute as to persons subject to its sovereign authority. A member of the armed forces of the United States retains his status as such when he moves

from one place to another, whether because of military order or as a matter of personal need or desire, and whether he travels alone or as part of a military unit. A member of the armed forces is subject to the Uniform Code of Military Justice, and the Code subjects him to its provisions "in all places." Article 5, UCMJ. In *Bowman,* the Court held that prosecution of a person subject to American sovereignty in an American court for an act in violation of a statute of the United States which was committed by him within the jurisdiction of a foreign country "is no offense to the dignity or right of the sovereignty" of that country. 260 US at 102. We perceive no impediment in American constitutional law or in international law to the exercise of court-martial jurisdiction over the accused in the circumstances of this case. Nothing in the Uniform Code and nothing in its historical antecedents absolves the accused from trial by court-martial because his offense was committed in a foreign country to which he had journeyed for private reasons. We conclude, therefore, that the accused was properly tried for the offense of which he was convicted.

The decision of the Air Force Court of Military Review is affirmed.

Senior Judge FERGUSON concurs.

## APPENDIX

### MILITARY LAW AND PRECEDENTS

OFFENCES COMMITTED IN A FOREIGN COUNTRY WHEN THE OFFENDER IS NOT PRESENT IN A MILITARY CAPACITY. Thus an officer or soldier of our army committing, in a foreign country, an act which, if committed at home, would constitute an offence against our military code, would in general be amenable to trial therefor, by court-martial, on his return, provided that when he committed it he was within the foreign territory *in a military capacity.* But if *not* present there in a military capacity — as where he had passed the frontier for private business or amusement, or on a social visit, or for other personal reason, or was there as a deserter from our army — his amenability to trial by a court-martial in his own army for an offence committed would depend upon the nature of the offence itself. [108] A crime or disorder committed against an inhabitant of the country could ordinarily scarcely be cognizable under the 62d Article as prejudicial to military discipline, or otherwise than according to the local law. But for an act which at home would constitute conduct unbecoming an officer and a gentleman, an officer offending would in general remain as liable to trial under Art. 61 as if the offence were committed within the United States. Thus it has been held that an officer of our army was liable under this Article to trial by court-martial in Texas for the offence of exhibiting himself in a drunken condition at a public entertainment in Mexico.[7] The status of amenability of the officer or soldier under the circumstances would thus be analogous to that of an officer or soldier absent on leave or furlough within his own country,[8] or while held as a prisoner of war by the enemy.[9]

The question of jurisdiction as affected by the 64th Article. This Article provides as follows: "The officers and soldiers of any troops, whether militia or others, mustered and in pay of the United States, shall, at all times and in all places, be governed by the articles of war, and shall be subject to be tried by courts-martial."

This enactment has recently been construed as conferring upon courts-martial by the term — "in all places," a jurisdiction over offences committed by officers

---

[7] See Digest, 331.

[8] See GCMO 14, Dept of Texas, 1888; also remarks upon this Article in Chapter XXV, post.

It may be observed, however, that, whether or not the offending officer or soldier were within the foreign territory with or without authority from his proper military superiors, would be im-

material; his status of amenability to our jurisdiction for offences committed in that territory would not be affected by the circumstances of his having been there with or without a leave of absence or pass, or other permission.

[9] See post — "Jurisdiction during Absence on leave or as a Prisoner of war."

or soldiers of the army in foreign countries, and thus to constitute authority for the trial, by a court-martial convened in our own territory, of a military offence committed abroad.[10] [109] With due deference to its source, this construction can but be regarded by the author as a forced one and not warranted either by the context or history of the Article. It is considered that this Article is a declaratory provision intending no more than simply to affirm the general rule of amenability to military law of any forces or detachments, such as militia or marines, who may be serving with the army in time of war, rebellion, &c., assimilating them to the latter in respect to discipline and jurisdiction. To the army itself, as such, the Article, it is believed, is not intended to apply, but only to the contingents which, under the Constitution and laws, may be employed with it in the U. S. service on particular occasions. This is deemed to be quite clear from the language of the original provision, which occurs first in Art. 1, Sec. xvii, of the Articles of 1776 and is repeated in Art. 97 of the code of 1806. Here, after the words — "in all places,"

is added — "when joined or acting in conjunction with the regular forces of the United States." Nor, in the view of the author, does the fact that this part of the Article is now omitted modify or affect its import, since these additional words were surplusage merely and doubtless omitted for that reason. It would only be when militia, marines, &c., were serving in connection with the army that they would properly be amenable to the jurisdiction of army courts, and, by the omission, the Article has been merely simplified without any change of meaning.

The sound conclusion is thus considered to be that the Sixty-fourth Article has, in fact, no larger or other significance or scope than as an enunciation of a general principle as aforesaid, and accordingly affects in no manner whatever the question of the amenability of officers or soldiers of the army for offences committed in foreign countries. This Article indeed, as being declaratory of the law as enacted in other statutes,[11] might well be dropped as superfluous upon a revision of the existing code.

---

[10] This ruling was one made by the Acting Judge Advocate General, in January, 1801, in a case of an officer who, having committed in Mexico what would be a military offence under our Art. 61, was held triable therefor by a court martial subsequently convened in the Department of Texas, not only on general grounds but also *by the authority of this Article.* See Digest, 331.

[11] As the Act of Feb. 28, 1795, c. 36, s. 4; the Act of July 29, 1861, c. 25, s. 3; Secs. 1621, 1644, Rev. Sts.