UNITED STATES, Appellee

v

THORNTON M. KEATON, Airman, U. S. Air Force, Appellant

19 USCMA 64, 41 CMR 64

Colonel *Bertram Jacobson* was on the pleadings for Appellant, Accused.
*Lieutenant Colonel Robert W. Vayda* and *Major Donald B. Strickland* were on the pleadings for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted by general court-martial, convened at Clark Air Base, Republic of the Philippines, of one specification of assault with intent to commit murder, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dishonorable discharge, confinement at hard labor for eight years, forfeiture of $75.00 per month for ninety-six months, and reduction. Intermediate appellate authorities affirmed the findings and sentence without change. We granted review to determine the validity of the accused's conviction in light of the constitutional limitations on court-martial jurisdiction delineated in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969).

O'Callahan was convicted by general court-martial, convened in the territory of Hawaii, for offenses which occurred in a hotel room in the city of Honolulu. The Supreme Court held that the court-martial was without jurisdiction to hear the case against O'Callahan since the offenses were committed off base in the civilian community, within our territorial limits and not in the *occupied* zone of a foreign country, were *cognizable in the civil courts which were open and functioning,* and the charged crimes were without military significance (*i. e.,* not "service connected"). The all-pervading factor behind the Court's holding is contained in its statement at 395 US, at page 273:

"... we see no way of saving to servicemen and servicewomen in any case *the benefits of indictment and of trial by jury,* if we conclude that this petitioner was properly tried by court-martial." [Emphasis supplied.]

In short, *O'Callahan* holds that since in a military trial an accused is not accorded the constitutional benefits of indictment and trial by jury (Article III, Amendments 5 and 6, United States Constitution), the court-martial is without jurisdiction to proceed if the offense, though proscribed by the Uniform Code of Military Justice, is not "service connected." Essential to this holding is the fact that the crime must be cognizable in the civil courts of the United States, either State or Federal, and that such courts be open and functioning.

The charged offense in this case (assault with intent to commit murder) is an offense proscribed by the Uniform Code of Military Justice, promulgated by the Congress under the constitutional authority to "make Rules for the

Government and Regulation of the land and naval Forces." Article I, section 8, clause 14. The intent of Congress that the law have extraterritorial application is specifically provided for in Article 5 of the Code, supra. Cf. United States v Bowman, 260 US 94, 67 L Ed 149, 43 S Ct 39 (1922). Since the offense occurred in a *friendly foreign* country, we must first determine whether constitutional principles apply to any United States trial for offenses committed abroad.

In Reid v Covert, 354 US 1, 1 L Ed 2d 1148, 77 S Ct 1222 (1957), the Supreme Court quite thoroughly documented and discussed its prior cases concerning the applicability of the Constitution when the United States acts against its citizens for offenses committed abroad. The interested reader is referred thereto. While the court was not in accord with reference to the main point at issue,[1] all generally agreed that such trials must accord with constitutional principles. The earlier declaration by the Supreme Court in Ross v McIntyre, 140 US 453, 35 L Ed 581, 11 S Ct 897 (1891), a consular court case, that "[T]he Constitution can have no operation in another country" was effectively laid to rest. See also Kinsella v United States, 361 US 234, 4 L Ed 2d 268, 80 S Ct 297 (1960).

In this case there was in effect, at the time of trial, a Treaty between the United States and the Government of the Philippines respecting the exercise of jurisdiction in criminal matters. This Treaty, 61 Stat 4019, 4025, dated March 14, 1947, TIAS 1775, amended August 10, 1965 (16 United States Treaties and other International Agreements 1090, TIAS 5851), granted to military authorities of the United States the right to hold courts-martial in the Republic of the Philippines in certain instances. Article XIII, sections 1, 2, 3, and 9 are particularly appropriate to the question under consideration.

In summary, section 1 of the Treaty provides for concurrent jurisdiction over United States servicemen insofar as the particular offense is proscribed by the laws of both countries. Under section 3, however, primary jurisdiction is vested in the Philippine courts for all offenses by servicemen except the following: those solely against the property or security of the United States; offenses solely against the person or property of a member of the United States armed forces, or civilian component, or of a dependent; and offenses arising out of any act or omission done in the performance of official duty. Waiver, by either Government, of the right to primary jurisdiction is also provided. Where the offense is punishable *only* by the law of one of the Governments, including offenses relating to its security, the right to exercise exclusive jurisdiction is vested in that Government (section 2). According to section 9, servicemen tried by Philippine courts will be afforded certain basic rights. While nothing is said in the Treaty about indictment and trial by jury, the matter is unimportant for *the Constitution of the United States applies only to trials by State or Federal courts of the United States.* Even if the Philippine system of justice included or exceeded the benefits conferred on citizens of this country, the procedure would still not be governed by our constitutional principles. Congress cannot by Treaty abrogate these rights. Reid v Covert, supra.

---

[1] Six members of the Court agreed that civilian dependents of members of the armed forces overseas could not constitutionally be tried by court-martial in times of peace for capital offenses committed abroad. Two members limited their holdings to capital cases while four expressed the broad view that military trial of civilians is inconsistent with the Federal constitution. Two justices dissented, holding to the belief that military trial of the dependents was constitutional. One justice took no part in the consideration or decision of the case.

Since the offense charged against Keaton is proscribed by Article 134 of the Code, and inasmuch as █ his victim was another serviceman (Airman Browder), the military authorities of the United States had, under the Treaty, the primary right to exercise jurisdiction over the offense and over the accused. A majority of this Court has held that an offense by one serviceman against another is "service connected" regardless of where or under what circumstances the offense was committed. See United States v Nichols, 19 USCMA 43, 41 CMR 43, and cases cited therein. For the purpose of this opinion we could leave the matter there. However, in light of that provision of the Treaty by which the Philippine Government could waive its primary right to exercise jurisdiction over offenses which are clearly not *"service connected,"* the question arises, and we should now decide, whether the accused is entitled, in those instances, to the benefits of indictment and trial by jury. O'Callahan v Parker, supra.

If, under the Constitution, a serviceman who commits a nonservice-connected offense abroad is entitled to the benefits of indictment and trial by jury, how can these benefits be afforded him? Constitutional protections of this nature are available only through the civil courts of the United States and only military courts are authorized to function within the Republic of the Philippines. Since there are no Article III courts established in the Philippines,[2] the only alternative would seem to be to return the accused to the United States for trial. While it is constitutionally permissible to try United States citizens for crimes abroad (Article III, section 2, clause 3, United States Constitution; Title 18, section 3238, United States Code; see cases cited at footnote 20, Reid v Covert, supra), the number and kind of

offenses in which such action can be taken is limited, inasmuch as the authority of Congress to legislate for trial in Article III courts extends only to those matters relating to the exercise of a power granted as to some matter within the jurisdiction of the United States. United States v Fox, 95 US 670, 672, 24 L Ed 538 (1878). Congressional authority to provide for trial of service personnel by court-martial stems from Article I, section 8, clause 14, of the Constitution. Insofar as we are aware, venue does not lie in Article III courts for those offenses proscribed in the Uniform Code which are not, at the same time, violations of the laws enacted under the authority of Article III, section 2, of the Constitution. It would appear then that there are a large number of codal offenses which could be committed by a serviceman overseas for which he could not be returned to the United States for trial, nor be given the benefits of indictment and trial by jury, the main thrust of the *O'Callahan* opinion, for the simple reason that the offenses are not cognizable in any civil court in the United States.

We do not believe that the Supreme Court, in *O'Callahan,* intended such a result. Rather, in our opinion, the constitutional authority of the Congress to "make Rules for the Government and Regulation of the land and naval Forces," must be read in conjunction with the "necessary and proper" clause of that same section of the Constitution. Article I, section 8, clause 18.[3] When read in this manner, █ it seems clear that *foreign trial* by court-martial of all offenses under the Code committed abroad, including those which could be tried by Article III courts if committed in this country, is a valid exercise of constitutional authority. See Kinsella v United States, supra.

---

[2] What we say here applies to all *friendly* foreign countries where United States troops are stationed at the present time.

[3] "To make all Laws which shall be necessary and proper for carrying into

Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

We hold, therefore, that the constitutional limitation on court-martial jurisdiction laid down in O'Callahan v Parker, supra, is inapplicable to courts-martial held outside the territorial limits of the United States.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Judge DARDEN concurs in the result.