UNITED STATES, Appellee

v

TIMOTHY J. MAHONEY, Private, U. S. Army, Appellant

19 USCMA 495, 42 CMR 97

No. 22,640

June 19, 1970

*Captain William W. Rittenhouse* argued the cause for Appellant, Accused. With him on the brief were *J. Terry Weeks, Esquire,* and *Captain Thomas R. Maher.*

*Captain Edward W. Hieronymus* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

FERGUSON, Judge:

Among other offenses, the accused was convicted of conspiracy to transfer marihuana (Charge I), in violation of Article 81, Uniform Code of Military Justice, 10 USC § 881. His sentence to a dishonorable discharge, total forfeitures, and confinement at hard labor for five years remains unchanged. We granted review on the single issue of whether the Government failed to prove the charge of conspiracy.

The specification of Charge I alleges in pertinent part that the accused,

". . . did, at Austin, Texas, on or about 16 January 1969, conspire with Private First Class Augustus T. Terry, III, . . . to commit an offense under the Uniform Code of Military Justice, to wit: the wrongful transfer of marijuana . . . , and in order to effect the object of the conspiracy, the . . . [accused] did receive from Thomas V. Watkins [sic] the sum of $20.00 in currency for the purpose of transferring marijuana."

At trial Wadkins, an agent of the Criminal Investigations Detachment, testified that on the day in question he was introduced, for the first time, to the accused and Terry by a confidential informant of his organization. He then related:

". . . At this time, Terry and Mahoney, the informant and myself, entered my vehicle. We took a drive and had a general conversation between all four of us. At approximately 2130 hours, Mahoney says to me to drive him to Austin, Texas, so that he could buy some marijuana and LSD. He stated that if I did, that he would arrange to introduce me to persons so that I could do the same, buy LSD and marijuana from these people.

 • • • • •

". . . At approximate 2400 hours, myself, the informant, Terry and Mahoney drove to a house on the corner of 26th Street and Rio Grande. Myself and the informant stayed in the car. Terry and Mahoney went into the residence.

Shortly thereafter, Terry came out, and whereupon myself and the informant and Terry returned, went into this residence. I entered the residence, Mahoney was already inside. We sat around, I sat around, Mahoney and Terry sat around the residence and shortly thereafter, a man by the name of Harns came into the residence. Mahoney had a conversation with Harns, asked him to sell him some marijuana. Harns said he already sold—

"DC: Objection.

"LO: Objection to what he—

"IDC: To what Harns had to say.

"LO: The objection is sustained as to that.

"Q[TC]. Omit what you were going to say about Harns and then continue.

"A. Mahoney asked Harns if he could purchase some marijuana. Mahoney and Harns had a discussion and finally Mahoney stated to Harns that I also wished to buy some marijuana. I am trying to say it without getting into hearsay. Mahoney asked me the question, 'How much marijuana do you wish to buy,' and I stated I wished to buy $20.00 worth, two ounces, approximately.

"Whereupon, Mahoney took the $20.00 bill which I gave to him, took it from me, and took a $20.00 bill out of his pocket and gave $40.00 to Harns, requesting that Harns take out two ounces for myself and two ounces of marijuana for him. At this time, Mahoney offered Harns a ride to the stash, where Harns had the marijuana hidden, stating that I had a vehicle, that I would take him to his stash. At that time, I left the residence with Harns. Harns got in my vehicle, went to a residence on Baylor Street, right near 12th and Lamar in Austin, Texas. Harns disappeared for a while, approximately five minutes, came back, carrying a paper bag. This paper bag was containing eight plastic packages of a green vegetable matter, two of which were—wait a minute—anyway, excuse me, came back with a bag, returned to the residence of 206 Rio Grande whereupon Harns gave me two of the plastic bags of the eight plastic bags in the paper bag.

. . . . .

"Q. Now, could you tell us why you gave the $20.00 to Mahoney?

"A. Mahoney was a person who solicited Harns to sell the marijuana to me and to him. Mahoney is the one that set the deal up. In other words, he apparently knew Harns, he was the man talking to him. Harns was near the front door. I was across the room, seated, across the other room. Mahoney held out his hand for the money, I gave him $20.00, he pulled $20.00 out of his pocket, and handed the $40.00 to Harns for two ounces of marijuana for myself and two ounces of marijuana for himself."

Wadkins also testified concerning their activities at another house, 708 22d Street, in Austin. We are not concerned with this testimony, however, for LSD, not marihuana was purchased by Mahoney at the other residence and the charge of conspiracy at issue here relates only to the transfer of marihuana to Wadkins. There was no discussion concerning the possible purchase of marihuana while the group was at 708 22d Street.

There is abundant evidence that Mahoney agreed to and did transfer marihuana to Wadkins. Mahoney was properly convicted of that offense (Charge II, specification 2). There is, however, simply no evidence of a criminal agreement between Mahoney and Terry to effectuate this transfer. Terry rode to Austin in the automobile and, after their arrival, went into the house with Mahoney. Later, he returned to the car and escorted Wadkins and the informant inside the house. The discussion with Harns, the supplier, the receipt of the money from Wadkins and the payment to Harns were all effectuated by Mahoney. Terry, according to this testimony, was only along for the ride. He took no part in the conversation and did not handle the money nor the marihuana. Of par-

ticular importance is Wadkins' testimony that he had not previously known either Mahoney or Terry prior to the day in question; that it was Mahoney who suggested the ride to Austin; and Mahoney who stated he would arrange to introduce Wadkins and the informant to people who could supply marihuana. "Mahoney is the one that set the deal up."

Presence at the scene alone is not sufficient to sustain a criminal conviction. United States v McCarthy, 11 USCMA 758, 29 CMR 574 (1960); United States v Lyons, 11 USCMA 68, 28 CMR 292 (1959). To sustain a conviction for conspiracy, there must appear in the record some persuasive evidence of an agreement between the alleged conspirators and an overt act. United States v Kauffman, 14 USCMA 283, 34 CMR 63 (1963); United States v Beverly, 14 USCMA 468, 34 CMR 248 (1964). While the alleged overt act, receipt of the money from Wadkins by Mahoney was proved (cf. United States v Kauffman, supra), if there was any evidence that Terry had, or intended to have any part in this transaction, other than the role of interested spectator, it is not reflected in this record. Reversal is required. United States v Beverly, supra.

That portion of the decision of the Court of Military Review affirming the accused's conviction of Charge I and its specification is reversed. The charge and its specification are set aside and ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the basis of the remaining findings of guilty.

Chief Judge QUINN and Judge DARDEN concur.