**UNITED STATES, Appellee,**

v.

**Paul BLACK, Jr., Specialist Five, U.S. Army, Appellant.**

**No. 30,071.**

U. S. Court of Military Appeals.

March 12, 1976.

---

*Captain John M. Nolan* argued the cause for Appellant, Accused. With him on the brief were *Colonel Victor A. DeFiori, Colonel Alton H. Harvey, Lieutenant Colonel James Kucera,* and *Captain Michael R. Caryl.*

*Captain Clement L. Hyland* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner, Captain Raymond Michael Ripple,* and *Captain Gary F. Thorne.*

## OPINION OF THE COURT

FERGUSON, Senior Judge:

The appellant challenges his conviction by general court-martial of conspiring to transfer heroin,[1] contending that the offense was not "service connected" and, hence, was not triable by court-martial. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *United States v. Beeker,* 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969). The conspiracy charge upon which the appellant was arraigned alleged that at Saigon, Vietnam, between November 1971 and August 1972, he conspired with Tran Quoc Tinh, a Vietnamese national, to commit the offense of wrongful transfer of heroin and that to effect the conspiracy he sent a letter to Specialist Beech, a friend of his who was then assigned in Vietnam, containing another letter and currency which was to be delivered by Specialist Beech to Tran Quoc Tinh.

---

1. Additional Charge I and its specification, alleging a violation of Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881. Additionally, the appellant was convicted of wrongful possession of .06 grams of marihuana, in violation of Article 134, UCMJ, 10 U.S.C. § 934, and acquitted of wrongful possession of a knife with more than a 3-inch blade, a charged violation of a lawful general regulation laid under Article 92, UCMJ, 10 U.S.C. § 892.

Interpreting *O'Callahan,* we previously have held that the constitutional restriction on the exercise of military jurisdiction does not apply where a serviceman commits an offense in a foreign country. *United States v. Newvine,* 23 U.S.C.M.A. 208, 48 C.M.R. 960 (1974); *United States v. Keaton,* 19 U.S.C.M.A. 64, 41 C.M.R. 64 (1969). Of primary significance herein is whether a conspiratorial agreement alleged to have been reached in a war zone overseas is itself sufficient to vest a court-martial with jurisdiction. The Government urges that completion of a substantial portion of this crime overseas was sufficient to subject the appellant to military jurisdiction. On the other hand, the appellant urges that the foreign country or "overseas exception" was not triggered here, since the conspiracy offense in issue was not complete until execution of the overt act in Kentucky, from whence the letter to Specialist Beech was sent. For the reasons discussed below, we agree that the "overseas exception" to the *O'Callahan* restriction on jurisdiction is not present in · this case; and, further, applying the *Relford* criteria, we find no service connection so as to vest jurisdiction over the conspiracy offense in the court-martial which tried the appellant.

I

THE "OVERSEAS EXCEPTION"

The nature and the rationale of the "overseas exception" to *O'Callahan* was well stated by this Court in *United States v. Newvine.*[2]

By its terms, the Uniform Code "applies in all places." Article 5, UCMJ, 10 USC § 805. However, in the *O'Callahan* case, the Supreme Court held that conduct in the civilian community by a person subject to the Uniform Code, which constitutes a violation both of the Code and the community's civilian penal code, but which has no special military significance or connection, cannot be prosecuted in a military court. This restriction on the exercise of court-martial jurisdiction was perceived by the Supreme Court as the only "way of saving to servicemen and servicewomen . . . the benefits of indictment and of trial by jury" guaranteed by the Fifth and Sixth Amendments. 395 US at 273. These rights are not assured by the United States Constitution to an accused in the courts of a foreign country in a prosecution for violation of that country's penal code; as a result, we have held that the constitutional restriction on the exercise of military prosecution, postulated in *O'Callahan,* does not apply to conduct violative of the Uniform Code that takes place "in a foreign country and . . . [is] not contrary to American civilian penal statutes having effect" in the foreign country so as to be cognizable in a civilian court in an American jurisdiction. *United States v Weinstein,* 19 USCMA 29, 30, 41 CMR 29, 30 (1969). We elaborated on the rationale for the inapplicability of *O'Callahan* to an offense committed by a serviceman in a foreign country in *United States v Keaton,* 19 USCMA 64, 41 CMR 64 (1969). The Court of Appeals for the 10th Circuit has reached the same conclusion. "[M]ilitary jurisdiction of crimes committed by servicemen in foreign countries," it said, "is left untouched by *O'Callahan.*" *Hemphill v Moseley,* 443 F2d 322, 323–324 (10th Cir 1971). See also *Gallagher v United States,* 423 F2d 1371 (CtCl 1970).

A. *The nature of the exception*

 Exceptions to a general proposition of law must be narrowly read and strictly applied. The "overseas exception" is rather clearly defined. *United States v. Newvine, supra.* It is present in this case only if the conspiracy offense was committed in Vietnam and if that offense was not in violation of American civil penal statutes in effect in Vietnam so as to be cognizable in a civilian court in the United States; otherwise, the overseas exception to the *O'Callahan* rule restricting jurisdiction may not be invoked to vest the court-martial with jurisdiction

2. 23 U.S.C.M.A. 208, 208–09, 48 C.M.R. 960, 960–61 (1974).

to try the appellant for this offense. *United States v. Weinstein*, 19 U.S.C.M.A. 29, 30, 41 C.M.R. 29, 30 (1969). We do not believe that the facts of this case satisfy either of these two prongs to the exception.

■ (1) While it is true, as the Government argues, that the "heart" of a conspiracy allegation is the charged agreement,[3] it is beyond cavil that a purported conspiracy is not criminally punishable as complete until an overt act occurs in furtherance of accomplishing the substantive offense.[4] In other words, an overt act is an essential element of a conspiracy offense which must be alleged and proved;[5] thus, regardless of what is the "heart" or the "gist" of conspiracy, until an overt act occurs, no conspiracy offense in the military has been committed. That is, unless and until a criminal offense is complete in the sense of all essential elements being present, it is not committed. As the overt act here in question was made

3. *United States v. Irwin*, 22 U.S.C.M.A. 168, 46 C.M.R. 168 (1973).

4. *United States v. Mahoney*, 19 U.S.C.M.A. 495, 42 C.M.R. 97 (1970); *United States v. Kauffman*, 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963). *See United States v. Beverly*, 14 U.S.C.M.A. 468, 32 C.M.R. 248 (1964).

5. Paragraph 160, Manual for Courts-Martial, United States, 1969 (Rev.).

6. We believe the dissenting judge's assimilation of Federal venue rules as the guiding principle in resolving military jurisdiction issues is ill advised. The only question to be answered in a venue determination is the more appropriate situs of trial. As the Supreme Court made clear in *O'Callahan* and *Relford*, and as we will note subsequently in the text of this opinion, much more is at stake in resolving whether an individual may be tried by court-martial or in Federal district court.

7. The substance of the sealed letter to Tran Quoc Tinh was that he was to mail the subject heroin directly to the civilian Florida address of the appellant's wife. It would appear, then, that the true essence of the appellant's alleged criminal transgression is the conspiracy to import a controlled substance into the United States.

8. 21 U.S.C. § 952.

9. 21 U.S.C. § 963.

by the appellant in the United States, the offense was not committed in Vietnam for purposes of inquiry into application of the overseas exception to *O'Callahan*.[6]

(2) Additionally, in our opinion, the essence of the offense[7] involved in the specification is contrary to American civil penal statutes in effect in Vietnam so as to be cognizable in a United States civil court. Importation of controlled substances is prohibited in our Federal law.[8] Also, the Congress has chosen specifically to proscribe attempts or conspiracies to violate the narcotics laws.[9] Because of the nature of these statutes, we believe that the Congress intended that such acts committed wholly or in part in a foreign country by the citizens of this country, which acts constitute not only threats to the integrity of our national borders but also obstructions to this Government's regulation of commerce with foreign nations,[10] be cognizable in our Federal courts.[11]

10. *United States v. LaFroscia*, 354 F.Supp. 1338 (S.D.N.Y.1973). *See Buttfield v. Stranahan*, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525 (1904). *Cf. Brolan v. United States*, 236 U.S. 216, 35 S.Ct. 285, 59 L.Ed. 544 (1915).

11. This Court recognized in *United States v. Keaton*, 19 U.S.C.M.A. 64, 67, 42 C.M.R. 64, 67 (1969):

While it is constitutionally permissible to try United States citizens for crimes abroad (Article III, section 2, clause 3, United States Constitution; Title 18, section 3238, United States Code; see cases cited at footnote 20, *Reid v. Covert* . . . [354 U.S. 1, 12, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957)]), the number and kind of offenses in which such action can be taken is limited, inasmuch as the authority of Congress to legislate for trial in Article III courts extends only to those matters relating to the exercise of a power granted as to some matter within the jurisdiction of the United States. *United States v. Fox*, 95 U.S. 670, 672, 24 L.Ed. 538 (1878).

However, we are convinced that under the following rationale of *United States v. Bowman*, 260 U.S. 94, 97–98, 43 S.Ct. 39–41, 67 L.Ed. 149 (1922), the Federal courts would have jurisdiction over the appellant and his alleged offense:

The necessary locus, when not specially defined, depends upon the purpose of Congress, as evinced by the description and nature of the crime, and upon the territorial limitations upon the power and jurisdiction

## B. *The rationale of the exception*

The purpose of *O'Callahan* is to insure indictment and trial by jury, and the rationale of the overseas exception to that standard's application is that those benefits are not available in foreign courts, anyway, so trial by court-martial is as close as is possible to affording all the rights and privileges to an accused in Anglo-American jurisprudence. Where our federal statutes prohibit conspiracies or attempts to import controlled substances, where that is the essence of the charged offense, and where an American civil court has jurisdiction over the person of the accused (as it did here, since the appellant had long since returned to the continental United States), the rationale of the overseas exception is not satisfied, for under the *O'Callahan* reasoning, a court-martial of this appellant is *not* as close as is possible to get toward affording him all the jury-related benefits of our constitutional law.

The Government relies heavily upon our decision in *United States v. Crapo*, 18 U.S.C.M.A. 594, 40 C.M.R. 306 (1969), in support of its position. The facts in *Crapo*, however, as well as the legal question there before us, are quite distinguishable from this case. There, the defendant and a companion hired the victim taxi driver to commute them to the military reservation. Once there, they struck the driver on the head several times, told him that one of the riders had a gun, and instructed him to drive them to Portland, Oregon. About 3 blocks outside the gate, they took the victim's wallet and extracted the money therefrom. Subsequently, when the car stopped for gas, the driver jumped from the cab and the defendant and his friend ran away. In light of these facts, and in consideration of the doctrine enunciated in *O'Callahan*, we opined: [12]

> Although the actual taking of . . . [the] money occurred in the civilian community and the civilian courts had cognizance thereof, the fact that the assault and force and violence, elements of the robbery, took place within the confines of a military reservation is, in our opinion, a sufficient basis to sustain military jurisdiction over the offense. *O'Callahan v. Parker*, supra. *The security of the base demands it.*

As is quite evident, *Crapo* simply is a case of applying the *O'Callahan* standard of service connection: weighing all the factors (since delineated in *Relford v. Commandant*, *supra*), including the part-on-post/part-off-post situation, to determine jurisdiction. It in no way involved what this case is all about: a blanket exception to the *O'Callahan* standard's applicability.

of a government to punish crime under the law of nations. Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds which affect the peace and good order of the community, must, of course, be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard. . . .

But the same rule of interpretation should not be applied to criminal statutes, which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction or fraud, wherever perpetrated, especially if committed by its own citizens, officers, or agents. Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that, to limit their locus to the strictly territorial jurisdiction, would be greatly to curtail the scope and usefulness of the statute, and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

*See United States v. Vicars*, 467 F.2d 452, 456 (5th Cir. 1972), *cert. denied*, 410 U.S. 967, 93 S.Ct. 1451, 35 L.Ed.2d 702 (1973), and cases cited therein.

12. *United States v. Crapo*, 18 U.S.C.M.A. 594, 596, 40 C.M.R. 306, 308 (1969) (emphasis added).

In instances like *Crapo* where that standard is to be applied, certain factors weigh in favor of court-martial jurisdiction and certain against, and the question becomes whether the former taken together rise to the level of "service connection." [13] In cases like that presently before us, however, the question is whether an exception to *O'Callahan* exists so as to make that standard inapplicable entirely; there is no exercise of weighing the factors involved—at least until such time as it is decided that the exception is not present and the *O'Callahan* standard does apply. Thus, *Crapo* and all cases like it are of no relevance in the present controversy.

## II

### ABSENCE OF "SERVICE CONNECTION"

■ Once it is judged that the overseas exception is not present in this case, the inquiry must then advance to the stage of applying the *O'Callahan* standard and the *Relford* criteria to determine whether there exists "service connection" so as to vest jurisdiction in the military nonetheless. The following factors militate against a conclusion of service connection to the charged conspiracy offense: There was no relation between the appellant's military duties and the offense; [14] the offense was not committed on a military reservation; [15] the offense was unrelated to authority stemming from the war power; the coconspirator was not another soldier or a dependent of another soldier; the "victim" was not in any way related to the military; a Federal civilian court was available to try the case; the offense involved no flouting of military authority; there was involved no threat to the security of the military post; [16] there was no violation of military property; and the offense—conspiracy to import heroin into the United States—is among those traditionally prosecuted in civilian courts, as the Federal Government has an overriding interest therein and it is "not specifically related to the military services." [17]

Therefore, for the reasons discussed, it is our judgment that the "overseas exception" to the *O'Callahan* rule restricting court-martial jurisdiction is not present herein, and that, in applying the *O'Callahan* standard, no "service connection" to the conspiracy offense exists so as to vest the court-martial with jurisdiction thereover.

The decision of the U.S. Army Court of Military Review is reversed. The findings as to Additional Charge I and its specifica-

13. It is at once apparent that in weighing all the factors to determine the presence or absence of "service connection," this Court found pivotal the fact that the security of the military installation had been violated by the accused's on-post criminal actions, which outweighed the fact that a portion of the offense occurred off-post. We found jurisdiction, then, by *applying* the rule and weighing all relevant factors of *O'Callahan*, which is not the exercise utilized in the search for an *exception* to the rule's application.

14. The mere fact that he was in Vietnam at the time of the agreement on military orders is not significant; this factor contemplates a real nexus between an accused's military *duties* and the offense—more than geography is involved, for geography is accounted for in the overseas exception.

15. Even the overt act—mailing the letter—occurred off-post in the United States, as is conclusively evidenced by the ZIP (zone improvement plan) postal-delivery number on the postmark. The appellant's on-post return address means no more than that he wishes the letter returned to him there if undeliverable to the addressee.

16. The heroin was to have been sent by the Vietnamese national *directly* to a civilian address in Florida. The only reason the Vietnamese national delivered the heroin to Beech, instead—contrary to the appellant's instructions—is because *Beech* persuaded him to do so *at the behest of the law enforcement authorities.*

17. *United States v. LeBlanc,* 19 U.S.C.M.A. 381, 382, 41 C.M.R. 381, 382 (1970). *Accord, United States v. Hughes,* 19 U.S.C.M.A. 510, 42 C.M.R. 112 (1970); *United States v. Pieragowski,* 19 U.S.C.M.A. 508, 42 C.M.R. 110 (1970); *United States v. Beeker,* 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969). *See United States v. Wills,* 20 U.S.C.M.A. 8, 42 C.M.R. 200 (1970). As in the principal cases cited above, we find the overriding Federal Governmental interest in this type of offense of particular import.

**346**

tion are set aside, and that charge is dismissed. The record is returned to the Judge Advocate General of the Army for resubmission to the Court of Military Review which is directed to hold further proceedings in abeyance pending this Court's disposition of the issues granted in *United States v. Jackson*, Docket No. 30,812, 3 M.J. 101.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

I disagree with the majority from two points of view.

First, if we consider the matter from the standpoint of the area where the offense occurred, the limitation imposed by *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), is not applicable. An offense committed on a military installation is not subject to the *O'Callahan* rule. *United States v. Paxiao*, 18 U.S.C.M.A. 608, 40 C.M.R. 320 (1969). Nor is an offense committed by a serviceman in a foreign country subject to the *O'Callahan* limitation. *United States v. Easter*, 19 U.S.C.M.A. 68, 41 C.M.R. 68 (1969). Here, as in *United States v. Crapo*, 18 U.S.C.M.A. 594, 40 C.M.R. 306 (1969), a part of the offense was committed in an area as to which *O'Callahan* does not apply and *Crapo* should control. I regard the offense as having occurred in South Vietnam because the illegal agreement was entered into in that country. For the purpose of determining constitutional venue jurisdiction, it "is now settled that 'prosecutions for conspiracy may be maintained either in the district in which the conspiracy was entered into, or in any district in which an act was done to effectuate the object of the conspiracy.'" *Sandroff v. United States*, 174 F.2d 1014, 1019 (6th Cir. 1949). In my opinion, the same rationale is applicable to determine whether constitutional military jurisdiction exists under the *O'Callahan* rule.

Secondly, even if I assume that the jurisdictional effect of the commission of the offense in a foreign country is negated by the extraterritoriality accorded by the majority to the Federal controlled substances statutes so as to bring the offense within the reach of the Federal civilian criminal courts, there is still court-martial jurisdiction. An offense cognizable in a civilian court can be tried in a military court if it is service connected. *United States v. Harris*, 18 U.S.C.M.A. 596, 40 C.M.R. 308 (1969). In my opinion, that connection exists in this case. The overt act that effectuated the illegal agreement affected the integrity of the military postal system.

I would affirm the decision of the Court of Military Review.