Lenon L. STEVENS, Petitioner-Appellant,

v.

WARDEN, U. S. PENITENTIARY, LEAVENWORTH, KANSAS, Respondent-Appellee.

No. 75–1778.

United States Court of Appeals, Tenth Circuit.

June 24, 1976.

---

Lenon L. Stevens, pro se.

E. Edward Johnson, U. S. Atty., Mary K. Briscoe, Asst. U. S. Atty., Topeka, Kan., for respondent-appellee.

Before PICKETT, Senior Circuit Judge, and SETH and McWILLIAMS, Circuit Judges.

PER CURIAM.

Appellant Stevens appeals the denial of his petition for a writ of habeas corpus by the United States District Court for the District of Kansas. Stevens is presently serving a thirty-year prison term at Leavenworth, Kansas for being absent without leave (AWOL) and for unpremeditated murder, both offenses having been committed while appellant was a soldier in the United States Army in South Vietnam. He was court-martialled under Articles 86 and 118 of the Uniform Code of Military Justice (UCMJ) in December of 1969. By this action he claims that the court-martial board lacked jurisdiction over him. Several grounds are advanced for the contention that he was triable for the offense only by the government of South Vietnam. The federal district court denied relief. We affirm.

A brief reference to the facts is necessary. In 1969 appellant was a combat soldier in the United states Army stationed in Vietnam. At the time of the incidents for which he was court-martialled, he was off base and AWOL from duty. The victim, a military policeman (MP), was also off base, but since at the time of the killing the latter was attempting to apprehend appellant, the MP was acting within the scope of his military duties. During the struggle between the MP and appellant, a twelve-inch bayonet found its way into the MP. Appellant testified in his own behalf at the court-martial; he claimed that the killing was accidental and that he was trying merely to rid himself of the knife when the MP pulled both appellant and the knife into himself. Based on eyewitness and other testimony, the court-martial board found appellant guilty of being AWOL and of unpremeditated murder. The conviction and sentence were affirmed by the United States Court of Military Appeals.

Appellant claims that because the crime occurred off base and in the civilian community of South Vietnam, that based on various treaty agreements then in effect with Vietnam, United States had no jurisdiction over him whatsoever for the crime

of murder (the AWOL conviction per se is not contested in this action). No authority is cited by appellant that a civilian court was present or available in which appellant's case could have been prosecuted. See *United States ex rel. Jacobs v. Froehlke,* 334 F.Supp. 1107 (D.C.1971). It further appears that the Republic of Vietnam was not the least bit interested in trying one American serviceman for killing another despite the off-base scene of the crime. See *Wilson v. Girard,* 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544. Appellant, being a combat soldier on active duty (i. e., neither a dependent, employee, nor discharged civilian) was subject to the UCMJ. 10 U.S.C. § 802 (Article 2, UCMJ). The Code pursuant to 10 U.S.C. § 805 is applicable to all places, including foreign countries. *Puhl v. United States,* 376 F.2d 194 (10th Cir. 1967). Hence even if an argument can be made that the territorial sovereign (i. e. Vietnam) retained jurisdiction despite the presence of the United States troops, one who violates the law of two sovereigns is subject to prosecution by both and may not complain of or choose the manner in which each proceeds against him. *Hall v. Looney,* 256 F.2d 59 (10th Cir. 1959).

Accordingly, the only question is whether under *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 appellant was entitled to a civilian court trial. As further described in *Relford v. Commandant, U. S. Disciplinary Barracks, Fort Leavenworth,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102, the rules to be applied in determining the "service connected" test are as follows:

"1. The serviceman's proper absence from the base.

2. The crime's commission away from the base.

3. Its commission at a place not under military control.

4. Its commission within our territorial limits and not in an occupied zone of a foreign country.

5. Its commission in peacetime and its being unrelated to authority stemming from the war power.

6. The absence of any connection between the defendant's military duties and the crime.

7. The victim's not being engaged in the performance of a duty related to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to the military post.

11. The absence of any violation of military property."

In interpreting the Supreme Court's holdings in *O'Callahan* and in evolving the so-called "overseas exception" to the tests prescribed therein, the Court of Military Appeals has held that a serviceman who commits a non-service connected crime in a foreign country can be court-martialled in this country. *United States v. Newvine,* 23 USCMA 209, 48 CMR 961 (1973). The recent decision by the Court of Military Appeals in *United States v. Black* does not restrict the *Newvine* holding, but merely defines the exact place where the conspiracy was committed. See 19 Cr.L. 2030, April 14, 1976. See also *Hemphill v. Moseley,* 443 F.2d 322 (10th Cir. 1971); *Gallagher v. United States,* 423 F.2d 1371 (Ct.Cl.1970); *United States v. Keaton,* 19 USCMA 64, 41 CMR 64 (1969).

In applying the *O'Callahan* criteria to the case at bar, it is clear that the murder offense was service connected in the following respects: appellant was not properly absent from the base; the crime was committed in a foreign country; the crime was not committed in peacetime (irrespective of the "legality" of the Vietnamese war); the victim was engaged in the performance of a military duty; appellant was flouting military authority. Of considerable importance too, are the facts that the crime was committed on "a far flung military base" to use Mr. Justice Douglas' words in *O'Callahan* and that there is no

indication that a civilian court in which appellant could have been prosecuted was present and available. It has been held that:

" . . . when, as in this case, the crime alleged to have been committed was committed on foreign soil subject to military occupation by the United States and it is a crime which has some significance insofar as the maintenance of good order and military discipline is concerned, the jurisdiction and authority of the court martial to try the case must be recognized, particularly since no other court is available." *United States ex rel. Jacobs v. Froehlke,* supra, p. 1111.

It is the opinion of this court that the requisite service connection necessary for court-martial jurisdiction is abundantly established under the facts of this case.

When this appeal was docketed, the parties were notified that the court was considering summarily affirming the judgment and sentence. They were additionally extended the opportunity to file memoranda in support of their respective positions. Only appellant has responded with such a memorandum. After carefully and thoroughly reviewing Stevens' memorandum and the records and files in this case, we are convinced that the judgment of the district court should be affirmed.

Affirmed. The mandate shall issue forthwith.