UNITED STATES, Appellee,

v.

Staff Sergeant Franklin D. KING, SSN
112–34–1117, United States
Army, Appellant.

CM 436945.

U. S. Army Court of Military Review.

29 Sept. 1978.

Captain Julius Rothlein, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Major Carlos A. Vallecillo, JAGC.

Captain Glen D. Lause, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Douglas P. Franklin, JAGC.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

OPINION OF THE COURT

JONES, Senior Judge:

The problem presented in this case is whether the specifications are sufficient to

set forth the "jurisdictional basis for trial of the accused and his offenses . . ." as required by *United States v. Alef*, 3 M.J. 414 (C.M.A.1977). The appellant was charged with absence without leave, presenting false claims for per diem and dependant travel allowances, and larceny of the funds which were the subjects of those claims in violation of Articles 86, 132, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 932 and 921.[1] He was sentenced to a dishonorable discharge. The convening authority suspended the discharge for one year and provided for the appellant to serve in the grade of E–4.

The Government followed the form specifications from Appendix 6, Manual for Courts-Martial, United States, 1969 (Revised edition), in charging the appellant. The specifications alleged the offenses occurred in Seoul, Korea.

The appellant maintains that showing the crime's commission overseas was not enough to show jurisdiction. Using the language of *Alef*, he argues that the specifications must show that a "balancing of the *Relford*[2] criteria weighs in favor of jurisdiction over the given defendant and his acts in a military tribunal." 3 M.J. at 418. He asserts that the overseas exception does not apply if the offenses are cognizable in a civilian court in the United States, citing *United States v. Black*, 1 M.J. 340 (C.M.A. 1976). Pointing to sections 287 and 641 of Title 18, United States Code, the appellant contends that he could have been tried in a federal district court for the false claims and the larcenies and that the specifications had to set forth those aspects of service connection which gave the court-martial the superior interest in trying the case.[3] We

think the appellant's argument fails for two reasons.[4]

■ First, the form specifications fully meet the requirement to establish the jurisdictional basis of the offenses. The specifications allege that the appellant, a member of the armed forces serving as a staff sergeant assigned to an Army unit in Korea, presented false claims against the United States to a military officer of the Army for payments due in conjunction with the performance of official duties and that government funds were stolen as a result of those claims. These specific facts and circumstances pleaded by the Government show the violations of the Code, inform the appellant as to what he must defend against, and demonstrate the basis for jurisdiction over the person and the service connection necessary for jurisdiction over the offenses. Cf. *United States v. Moore*, 1 M.J. 448 (C.M.A. 1976); *United States v. Henderson*, 2 M.J. 1031 (A.C.M.R.1976).

■ Second, the appellant first raised the question of the sufficiency of the specifications at this level. He did not challenge the specifications in the trial forum by motion as the Court of Military Appeals has suggested should be done. *United States v. Alef, supra*, n.18. The pleading practice made mandatory by *Alef* is a procedural rule. It was instituted by the Court of Military Appeals to cure the twin deficiencies of insufficient notice to an accused of the basis for jurisdiction and insufficient development of facts in the record to support that jurisdiction. *Alef* is aimed primarily at the off-post, civilian-type offense committed within United States territorial

---

1. The issue raised by the appellant applies only to the false claims and larceny offenses.

2. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

3. The appellant does not before us and did not at trial assert that the court-martial in fact had no jurisdiction over the offenses. He only *maintains that the specifications did not allege jurisdiction sufficiently.*

4. We find it unnecessary at this time to address the question of the retroactivity of the *Alef*

pleading requirement. In view of the recent decisions of *United States v. Mixson*, 5 M.J. 236 (C.M.A.1978), and *United States v. Cannon*, 5 M.J. 198 (C.M.A.1978), we have no doubt that the decision in *Alef* would be prospective in application. The remaining question would be whether that prospectivity would apply to cases tried after 11 October 1977, as in *Cannon* or to actions taken (*i. e.*, charges preferred) after that date as may have been indicated by *Mixson*.

limits. Jurisdiction may not be waived and may be raised at any time. However, since the form of the specification is not itself jurisdictional, it is subject to waiver. The appellant's inaction below was fatal. Paragraph 67*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). *Cf. United States v. Reams*, 9 U.S.C.M.A. 696, 26 C.M.R. 476 (1958); *United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953).

■ There is yet another aspect of this case which we believe warrants discussion. It concerns the nature and extent of the "overseas exception" to the *O'Callahan*[5] rule. The Government argues that pleading the overseas situs of the offenses is sufficient to show jurisdiction and that, contrary to appellant's contention, the fact that the offenses were violations of the United States Code and could have been prosecuted in a federal district court is immaterial. We agree with the Government that under the *O'Callahan* and *Relford* decisions, situs alone can be a sufficient service connecting factor for court-martial jurisdiction. Our reasoning follows.

■ The two elements of jurisdiction which must be present in every court-martial are jurisdiction over the person and jurisdiction over the offense. The former is shown by establishing that the accused is a person subject to the Uniform Code of Military Justice, 10 U.S.C. § 801, *et seq.* In this case, jurisdiction over the person is based upon Article 2(1), UCMJ, 10 U.S.C. § 802(1), since the accused is a member of a regular component of the armed forces. The pleading requirement of *Alef* is met as to jurisdiction over the person by alleging in the specification that appellant is a member of the Army who is assigned to a particular unit and possesses a particular rank.

Jurisdiction over the offense as a facet of the jurisdictional question is of rather recent concern. Prior to the decision of the Supreme Court in *O'Callahan*, the military status of the accused had been a sufficient basis for jurisdiction. With the advent of *O'Callahan*, the Court also began to focus on the facts surrounding the offense.[6]

The Supreme Court has not dealt with a case involving offenses committed by a service member in a foreign country. In *O'Callahan*, the offenses occurred in Hawaii when it was a territory of the United States. The Court emphasized that the offenses occurred on United States soil, but it did not elaborate on the nature and extent of jurisdiction over offenses committed in a foreign country.

In *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), the Court gave its interpretation of *O'Callahan*. The Court pointed to 12 factors used in *O'Callahan* to measure "service connection" and applied those to Corporal Relford's case. The Court concluded that the occurrence of offenses on the military reservation which violated the security of a person or property thereon was sufficient service connection to sustain trial by court-martial. Thus the jurisdiction of courts-martial over on-post offenses was reaffirmed without regard to the eleven other factors which might be present. This result was reached notwithstanding the fact that the crimes were civil in nature and could have been prosecuted in a civilian court.[7] The Court stated that "The case . . . marks an area, perhaps not the limit, where the court-martial is appropriate and permissible." 401 U.S. at 369, 91 S.Ct. at 657.

In *Relford*, the Supreme Court carved out an on-post exception to *O'Callahan* despite the fact that for many on-post offenses there would be a federal district court or a state court open, functioning, and with jurisdiction over the offenses. If cognizance of the offenses in civilian courts was not of importance in the on-post cases in the United States, then that factor would be of even

---

5. *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

6. Previously, it had been thought that Congress determined the offenses which were triable in a court-martial. *O'Callahan v. Parker*, 395 U.S. 258, 275, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) (Harlan, J., dissenting).

7. 18 U.S.C. §§ 7, 13, 2031 (1976).

less importance where the offenses occurred overseas. Therefore, we conclude that the Supreme Court has not limited court-martial jurisdiction overseas to offenses which are not cognizable by a civilian court in the United States.

The Court of Military Appeals has addressed the question of the overseas exception on several occasions. The most recent extended treatment of the subject is *United States v. Black, supra.* In *Black,* the Court enumerated a two-prong test which must be met before the overseas exception would apply: (1) the offense must be committed in a foreign country, and (2) the offense must not be cognizable in a civilian court in the United States. This test had its origin in *United States v. Weinstein,* 19 U.S.C.M.A. 29, 41 C.M.R. 29 (1969), wherein Chief Judge Quinn stated:

> The [marihuana] offenses occurred in a foreign country and are not contrary to American civilian penal statutes having effect in Germany. Consequently, the constitutional limitation on court-martial jurisdiction delineated in the *O'Callahan* case is inapplicable. 41 C.M.R. at 30.

It is questionable whether *Weinstein* intended to establish two requirements for the overseas exception or merely added the comment on the inapplicability of American penal statutes in Germany only as a makeweight to support jurisdiction. The language itself supports the former but the citation of *United States v. Goldman,* 18 U.S.C.M.A. 389, 40 C.M.R. 101 (1969), as authority supports the latter interpretation.

In *United States v. Keaton,* 19 U.S.C.M.A. 64, 41 C.M.R. 64 (1969), decided a month after *Weinstein,* the Court emphasized the need for court-martial jurisdiction overseas to provide a forum for those cases where an offense was not cognizable in a United States civilian court. The Court said that it was essential to the holding in *O'Callahan* that the civilian courts were

open and had jurisdiction over the crimes. However, the Court did not make the absence of an available civilian court a requirement for jurisdiction. The Court said simply:

> We hold, therefore, that the constitutional limitation on court-martial jurisdiction laid down in *O'Callahan v. Parker, supra,* is inapplicable to courts-martial held outside the territorial limits of the United States. 41 C.M.R. at 68.

From *Keaton* and an intervening opinion, *United States v. Newvine,* 23 U.S.C.M.A. 208, 48 C.M.R. 960 (1974), the Court of Military Appeals reached its position in *Black,* leaving no doubt that court-martial jurisdiction over an overseas offense would not lie unless the offense was not cognizable in a United States civilian court.

The only United States Court of Appeals decision dealing with this subject that has come to our attention is *Hemphill v. Moseley,* 443 F.2d 322 (10th Cir. 1971). That Court rejected the reasoning that was later reached by the Court of Military Appeals in *Black* when it held that the *O'Callahan* decision left military jurisdiction over crimes committed by servicemen in foreign countries untouched.[8] The Court indicated that the problem of determining which federal statutes should apply overseas and where the venue would lie was too complicated to permit an easy solution. It found the overseas exception to be absolute.

We recognize our responsibility to follow the decisions of the United States Court of Military Appeals in military matters, *United States v. Heflin,* 1 M.J. 131 (C.M.A.1975), n.6, and we also recognize our obligation to follow the decisions of the Supreme Court on constitutional issues. *United States v. Alef, supra,* n.4. In our opinion, these obligations are in conflict on the question of the jurisdiction of courts-martial over offenses committed by servicemen in a foreign country.

---

**8.** The 10th Circuit cites *United States v. Keaton,* 19 U.S.C.M.A. 64, 41 C.M.R. 64 (1969), in support of its decision. Later, the Court of Military Appeals in *United States v. Newvine,* 23 U.S.C.M.A. 208, 48 C.M.R. 960 (1974), cited

*Hemphill* for the statement that "Military jurisdiction of crimes committed by servicemen in foreign countries was left untouched by *O'Callahan.*"

In the instant case, there was a proper basis for decision without having to choose between the conflicting responsibilities. That will not be the case at other times. Accordingly, we ask the United States Court of Military Appeals to reevaluate its position in *United States v. Black, supra,* regarding the overseas exception and to conclude that overseas situs is sufficient in itself to support court-martial jurisdiction.

The findings of guilty and the sentence are affirmed.

Judge LEWIS concurs.

DeFORD, Judge, concurring:

Although I concur in Judge Jones' opinion, I believe it is appropriate to point out that Judge Ferguson's comments with regard to the so-called "overseas exception" to the *O'Callahan* doctrine which he enunciates in the majority opinion in *United States v. Black,* 1 M.J. 340 (C.M.A.1976), may be classified as *obiter dictum.* Black's offense of conspiracy to transfer heroin was, by that Court's holding, completed in the United States. Accordingly, that portion of *United States v. Black* which deals with the creation of the two-part test which must be met in order to apply the overseas exception to the *O'Callahan* doctrine is not entitled to the doctrine of *stare decisis* for the reasons I set forth on that subject in a separate concurring opinion in *United States v. Washington,* 5 M.J. 615, 616 (A.C. M.R.1978).

I join Judge Jones in requesting the United States Court of Military Appeals to reevaluate their previous thinking on this important subject in an appropriate case in order that a conflict with the decisions of the United States Supreme Court can be avoided.