UNITED STATES, Appellee,

v.

Staff Sergeant Raymond B. HOLMAN,
265–94–5036, United States
Army, Appellant.

CM 444649.

U.S. Army Court of Military Review.

27 Dec. 1984.

Captain Robert S. Johnson, JAGC, argued the cause for the appellant. With him on the brief were Lieutenant Colonel William P. Heaston, JAGC, and Captain Harry L. Williams, Jr., JAGC.

Captain Thomas E. Booth, JAGC, argued the cause for the appellee. With him on

the brief were Colonel James E. Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, and Major Larry D. Williams, JAGC.

Before SU–BROWN, YAWN and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

SU–BROWN, Senior Judge:

Contrary to his pleas appellant was convicted of three specifications of larceny by false pretenses in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921 (1982). The military judge, sitting as a general court-martial, sentenced appellant to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. The convening authority approved the sentence.

The offenses in this case arose when appellant, on three separate dates, sold substances he represented to be illegal drugs to an undercover military police investigator at a Korean bar. Since the substances were not the promised drugs, appellant was charged with three specifications of larceny of the government funds given to him in exchange for the substances. These specifications, which vary only as to the date of the offenses and the amounts stolen, allege, in pertinent part, that appellant "did, at Tong-du-Chon, Korea, ... steal ... US currency, the property of the US Government, said offense occurring outside the territorial limits of the United States." At trial appellant argued that the specifications did not contain sufficient information to demonstrate court-martial jurisdiction over the offenses as required by *United States v. Alef,* 3 M.J. 414 (C.M.A.1977). Appellant also argued that, even though his offenses were

committed overseas, the military, as a substantive matter, lacked jurisdiction to court-martial him since his offenses were triable in a United States civilian forum under 18 U.S.C. § 641 (1982)[1] and the Government did not prove his offenses were service-connected. *See O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) (a crime must be service-connected to be under military jurisdiction). *See also Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). Appellant renews these arguments before this Court. We find them to be without merit.

■ The Supreme Court in *O'Callahan* restricted military court-martial jurisdiction to offenses that were "service connected." The decision in *O'Callahan* did not purport to limit, and has not been interpreted as limiting, military jurisdiction over offenses committed by a servicemember in a foreign country. *See United States v. Weinstein,* 19 U.S.C.M.A. 29, 41 C.M.R. 29 (1969); *United States v. Keaton,* 19 U.S.C.M.A. 64, 41 C.M.R. 64 (1969); *Hemphill v. Moseley,* 443 F.2d 322 (10th Cir.1971); *Gallagher v. United States,* 423 F.2d 1371, 191 Ct.Cl. 546 (1970). Instead, a well known exception to *O'Callahan,* known as the "overseas exception," has developed. The overseas exception was most recently discussed by the Court of Military Appeals in *United States v. Black,* 1 M.J. 340 (C.M.A.1976). In *Black* the Court stated this exception is triggered only if an offense is committed overseas and is not a violation of an American penal statute so as to be cognizable in a civilian court in the United States.

■ Under a literal application of *Black* this case does not fall within the "overseas exception" since appellant's offenses were punishable under a federal statute with extraterritorial effect.[2] The inapplicability

**1.** *See United States v. Lazzaro,* 2 M.J. 76, 77 (C.M.A.1977) (18 U.S.C. § 641 has extraterritorial effect); *United States v. Cotten,* 471 F.2d 744 (9th Cir.1973). This section of the United States Code makes it a federal crime for an individual to embezzle, steal, purloin or knowingly convert to his use or the use of another, or without

authority, sell, convey, or dispose of any record, voucher, money or thing of value of the United States or of any department or agency thereof.

**2.** In *United States v. King,* 6 M.J. 553 (A.C.M.R. 1978), *pet. denied,* 6 M.J. 290 (C.M.A.1979), this Court questioned the second element of the

of this exception does not establish the military lacked jurisdiction. Instead, the case is then analyzed under the criteria of *O'Callahan* and *Relford* to determine whether the offense is service-connected.

■ The overseas exception, as discussed in *Black*, was not based upon the military having a *per se* interest in an offense committed overseas. The exception developed in recognition that, if an offense occurs overseas, trial by court-martial was preferrable to trial by a foreign court. The service-connection test of *O'Callahan* was developed to ensure that the rights to indictment and trial by jury, which are guaranteed in an American civilian court, are preserved for a servicemember unless the military has a particular interest in asserting jurisdiction. Since those rights are not available in a foreign court, trial by court-martial comes as close as possible to ensuring those rights when the offense is not cognizable in a United States civilian court. Accordingly, military jurisdiction is found without any inquiry into service-connection. We believe a more appropriate "overseas exception" is one based upon the service-connection inherent in an offense committed by a servicemember overseas.

In *Relford v. Commandant, supra,* the Supreme Court established an "on-post" exception to *O'Callahan*. This exception, which establishes military jurisdiction over

all offenses committed on-post by servicemembers, was premised on the determination that when an offense is committed on-post the service-connection of the offense is *per se* established. Similarly, we find the overseas situs of an offense, committed by a servicemember who is overseas pursuant to military orders, necessarily establishes the "service-connection" of the offense and thus the court-martial jurisdiction over such misconduct.

In *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Supreme Court stated:

[Service-connection] turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts.

*Id.* at 760, 95 S.Ct. at 1314. *See also Relford,* 401 U.S. at 367–68, 91 S.Ct. at 656–57. Applying these considerations to an offense committed overseas by a servicemember, we find such an offense has an obvious and unquestionably adverse impact upon military operations and the military mission.

■ To ensure good order and discipline, the military must be able to control and direct its servicemembers overseas. One of the more practicable methods for main-

overseas exception as enunciated in *Black*. This Court did not believe the application of the overseas exception turned on whether the charged offense was cognizable in a United States civilian court. *King* noted that *O'Callahan* did not make the absence of an available civilian court a requirement for jurisdiction and that prior precedent had not established such a prerequisite for application of the overseas exception. One judge in *King* also questioned the precedential value of *Black* since the Court in *Black* found, as a preliminary matter, that the offense at issue had not occurred overseas and therefore did not satisfy the first element of the "overseas exception." 6 M.J. at 553 (DeFord, J., concurring).

In any case, *Black* does not establish whether the determination that an offense is cognizable in a civilian court is based on a practical or a theoretical inquiry. In *Black* the Court found the offense was cognizable in a United States

court since federal statutes prohibited the charged offenses and a civilian court had personal jurisdiction over the accused. This analysis indicates a pragmatic application of the second element of the overseas exception. Subsequent opinions by the Court of Military Appeals only note cryptically that the overseas exception is inapplicable because the offense is "in violation of an American civil penal statute with extraterritorial effect so as to be triable in a United States civil forum." *United States v. Lazzaro,* 2 M.J. 76, 76 (C.M.A.1976) (per curiam). *See also United States v. Gladue,* 4 M.J. 1, 5 (C.M.A.1977). These decisions indicate that application of the second element of the overseas exception may not have been based on practical considerations. We do not resolve this ambiguity since our decision renders it unnecessary to parse the meaning of the overseas exception set forth in *Black*.

taining order in a command is the ability to try and punish misconduct. The need for this power is primary overseas. Unless the military retains control over the servicemember, he will be unavailable to perform his duties. The sensitivity of our overseas missions, coupled with the economic cost of sending an individual overseas and then replacing him if he commits a crime and is not subject to military control, compels the conclusion that the military's ability to efficiently and effectively execute its mission is compromised whenever a servicemember commits a crime overseas.

Additionally, with respect to the military's presence overseas, the relationship between the military and foreign community tends to be injured when an offense is committed. As a consequence, servicemembers may not receive local support from the community, which in turn affects morale. *See United States v. Lockwood*, 15 M.J. 1 (C.M.A.1983). While certain offenses may seem to have little direct effect on foreign relationships, the reputation of the military is nonetheless tarnished by such offenses. As a representative of the United States, the military has a strong interest in ensuring that the integrity and honor of its troops are not questioned. The military cannot become known as the bastion for criminals of any type. As the Court of Military Appeals recognized in *Lockwood*, maintaining intangibles like reputation and morale are essential to accomplishing the military mission. 15 M.J. at 10. While these intangibles are important wherever the military is located, the need for maintaining them are far greater in a foreign country where the military is, in effect, a guest. The military has a compelling interest in ensuring that its presence is welcomed in the foreign community. This interest extends from mitigating the alienation a soldier may feel living in a foreign community to securing the continual presence of the military. Accordingly, the geographical and military relationships overseas cannot be underestimated in assessing the service-connection of overseas offenses. *See Relford*, 401 U.S. at 368, 91 S.Ct. at 657.

These factors, which establish the service-connection of an overseas offense, are not counterbalanced by the probability that a United States civilian court will vindicate the military interest. As a theoretical matter, an offense committed overseas may be cognizable in a United States civilian court. As a practical matter, the possibility that a civilian court will exercise jurisdiction over such an offense is remote. *See Hemphill v. Moseley*, 443 F.2d 322 (10th Cir.1971) (determination of which federal statutes apply overseas and where venue would lie is problematic). Moreover, if an American civilian court did exercise its jurisdiction in these cases, such prosecutions are not likely to be responsive to the military's concerns and interests in maintaining its disciplinary authority overseas.

In *United States v. Lockwood*, the Court of Military Appeals directed:

> [T]he criteria for service-connection should be reexamined periodically in light of changes in the conditions under which the Armed Services perform their assigned missions and the accompanying changes in the impact of crimes upon their ability to accomplish those missions.

15 M.J. at 10. Examining the criteria for service-connection with respect to an offense committed overseas by a servicemember who is present there pursuant to military orders, we are persuaded in all instances that such offenses are service-connected. We do not believe courts need to engage in an *ad hoc* determination of whether court-martial jurisdiction lies over such offenses. Under the "overseas exception" based upon service-connection, military jurisdiction will automatically be found. Consequently, the overseas situs of appellant's offenses was sufficient to establish court-martial jurisdiction and satisfy the pleading requirements of *Alef.* Cf. *United States v. Adams*, 13 M.J. 728 (A.C. M.R.1982) (if jurisdiction was in fact established, appellant has no complaint under *Alef*).

We find the remaining assignments of error to be without merit.

The findings of guilty and the sentence are affirmed.

Judge YAWN and Judge WALCZAK concur.